## RINAKE v. VICTOR MFG. CO.

NONSUIT—NEGLIGENCE.—There was some material testimony in this case tending to show that the negligence of defendant was the proximate cause of the injury; nonsuit was, therefore, improper, and the case should have gone to the jury. *Justice Gary dissents.*

Before KLUGH, J., Spartanburg, July term, 1898. Reversed.

Action for damages by Fred Rinake against Victor Manufacturing Co. From order of nonsuit, plaintiff appeals.

*Messrs. Duncan & Sanders,* for appellant, cite: 48 S. C., 195; 53 S. C., 538; 21 S. C., 93.

*Messrs. Haynsworth & Parker* and *Hydrick & Wilson,* contra, cite: 45 S. C., 282; 19 S. C., 510; 37 S. C., 55; 44 N. Y., 372; 7 Ill. R., 130; 111 U. S., 313; 44 Fed. R., 855; 43 S. C., 388.

May 11, 1899. The opinion of the Court was delivered by

MR. JUSTICE POPE. The presiding Judge, at the close of the testimony of the plaintiff, granted a nonsuit. The appellant now seeks to reverse the judgment entered upon that nonsuit. If there was any competent testimony material to the plaintiff's cause of action against the defendant, it was error to grant the nonsuit.

First. What was plaintiff's cause of action?

Second. Was there any testimony in support thereof?

Plaintiff sued defendant to recover $12,000 as damages arising from the neglect of the defendant in its duty to the plaintiff as its servant in providing itself, or suffering some one else, with its approval, to provide a plank to ascend to a gangway leading into its buildings, which said plank, so ascending and so leading, was suffered by the defendant to become loose and to remain so loose for a long time, whereby any one who used such plank as aforesaid was subjected to great danger, and whereby the plaintiff, on the 2d September, 1896, as said servant, by reason of the fall of said plank, while he was upon the same in his discharge of duty as watchman, in ascending, fell to the earth (so was violently thrown to the ground). It is apparent that the cause of action of the plaintiff is the alleged breach of duty owed by the defendant to the plaintiff as its employee; in other words, that the defendant, having failed to discharge its duty to the plaintiff, as its servant, was guilty of negligence, which negligence was the proximate cause of plaintiff's injury. It was the duty of the plaintiff to establish by the testimony offered by him, by its preponderance, this alleged negligence of the defendant. As is well said in 16 A. & E. Enc. of Law, at pp. 465-466, in discussing the subject of negligence: "The general rule is well known that questions of fact are to be submitted to the jury; and this includes not only cases when the facts are in dispute, but also when the question is as to inference to be drawn from such facts after they have been determined. It will be readily observed that few cases will arise in which there is no question as to the facts involved; the element of ordinary care must from its very character always require the decision of a jury, except where there is a violation of statutory duty, or when the facts are undisputed, and but one inference can reasonably be drawn from them. And the same is equally true as to the determination of the question of proximate cause, so that the following rules may be stated as applicable to every case. The

issue of negligence should go to the jury: 1. When the facts which, if true, would constitute evidence of negligence are controverted.   2. When such facts are not disputed, but there may be a fair difference of opinion as to whether the inference of negligence should be drawn.   3. When the facts are in dispute, and the inferences to be drawn therefrom are doubtful."   When Judge Klugh, at the close of plaintiff's testimony, on motion of defendant's counsel, granted a nonsuit, and the plaintiff presents an appeal from such order, it becomes necessary for this Court to determine from the "Case for appeal," if there was any material testimony offered by the plaintiff on the issue of defendant's negligence, as the proximate cause of defendant's injury; if there was no such testimony, there was no error by the Circuit Judge; but if, on the contrary, there was such testimony, the Circuit Judge was in error, and the plaintiff is entitled to a new trial.   The defendant admits in its answer that the plaintiff was in its employment, and in the discharge of his duties at the time of his injury, as night watchman, of its property, consisting of a manufacturing plant.   There is no dispute that the discharge of the duties of such night watchman required that he should go every twenty-five minutes over and through the buildings of such cotton factory and its yard.   There is no question but that in the nighttime of the second of September, 1896, the plaintiff fell from a wing to the gangway leading from the ground to the second story of the mill building, and was thereby considerably injured. The defendant in its answer alleges that the injury of the plaintiff was not caused by the appliance which it furnished for its servants to enter and depart from its mill, but was caused by a plank placed against its gangway, which said plank was not a part of said gangway, nor was it constructed or furnished by this corporation as a way of approach to said building, nor was the use thereof in any way authorized or approved by it.   But that Robert McCarrell, an independent contractor, placed said planks or wings to the gangway of defendant, and that the defendant had no control or author-

ity over said McCarrell, or over any of his employees or any of the appliances used by them. Again, the defendant alleges that said plank or wing to the gangway was not so placed by the defendant or by its order, or for the use of any of its employees. Thus it is made manifest that the question of the relation of the defendant to said plank against the gangway, so far as its construction, or its adoption by the defendant, after its construction, for the use of defendant's employees or servants, becomes a very important issue between the plaintiff and the defendant. We have examined the testimony, and find that there is material testimony offered by the plaintiff not only to the use of this plank or wing to the gangway by the employees of the defendant, to the knowledge of the president or superintendent, but also that the president or superintendent of the defendant mill— one Mr. Burgess—admitted before and after the accident to plaintiff, that the defendant ought not to have suffered such plank or wing to have remained unattended to. The plaintiff in his testimony stated in answer to this question : "You stated to counsel that Mr. Burgess knew it was dangerous. Who is Mr. Burgess, who was president of the mill at the time? Ans. Mr. Burgess. Where is he now? Ans. He is right there (in the room). Q. How do you know that he knew it was dangerous? A. I don't know. He told it before the hands (workmen) when he put me in the wagon. He said he ought to have that plank fixed. It was a dangerous place; it pretty near broke down with him himself."

F. L. Tillatson, a witness for plaintiff, testified : "He (Mr. Burgess) only said that morning (morning after plaintiff was injured) that he was down there, that he was very sorry that Mr. Rinake got hurt. It ought to have been fixed, or he ought to have had it fixed, I can't be sure which." Charles Jackson, a witness for plaintiff, in his testimony, stated that on the afternoon of the day in the night of which plaintiff was injured, "Mr. Burgess came down in front of me, and as I went on down there were two little gangways,

one on each side, and Mr. Burgess sorter slipped up, he says, 'Such work as this won't do; this must be fixed.' "

But let us examine the testimony, and learn whether the independent contractor, McCarrell, and his hands alone used these planks at the side of the main gangway. The plaintiff testified: "Q. How would you go up into the building, when you went up into the building to see that everything was safe? A. I took the main gangway. But sometimes the main gangway was blockaded with lumber, so the only chance I had was to take the side gangway. Q. What do you mean by side gangway? A. Planks that go up on the sides. Q. How often had you used that main gangway and those side gangways? A. Just as it was convenient. If the main gangway wasn't blockaded, I would go up the main gangway. Q. Who else used that main gangway and those side gangways? A. Most everybody that was working there. Q. Whom do you mean by 'everybody?' A. I mean all the hands who were working there." The witness, Ben H. Walker, testified: "Q. For whom were you working? A. For the company. Q. By contract or day laborer? A. Day laborer. Q. Who built the wings? A. Mr. McCarrell had them done, I think. Q. Who used those wings? A. The company and Mr. McCarrell, too. Q. What did the company use those wings for? A. Sometimes there when we were taking out anything we would walk up these, but if we were carrying anything heavy, we would go up the main gangway. I have walked up these a heap of times with a stick of timber with two men to it. Q. Where was Mr. Burgess when this work was going on about the mill? A. He was around there nearly every day. Sometimes he was gone a week or ten days. Q. What objection did he make to the hands of the mill using those wings? A. None at all in my hearing. Q. The timber and material that were carried up the wings and main gangway were carried up for whom? A. The wood that was carried up there was for the company. Q. How long had the company been allowing the wood to be carried up there?

A. Ever since it had been there we went up that way when it was easier to do it; in carrying window sash or anything like that, it was easier to do it, was in the shelter, and we would generally come up the left gangway. They were nearer the wing than the main gangway. Q. Nobody ever told you to quit? A. No, sir, not to me they didn't." The witness, F. L. Tillatson, examined for the plaintiff, testifies: "Q. You know who built the main gangway and who built the wings? A. No, sir, I do not; they were built before I went there. Q. Do you know who used them? A. They were used, I think, by all parties. Q. When you say by 'all parties,' what do you mean? A. I mean they were used by the brick mason men to get to their work, and the carpenters." John Dempsey, a witness for plaintiff, testified: "Q. From what you saw going on, do you know who had used the wing as well as the gangway previous to that time? A. It was used both by the company hands and Mr. McCarrell's hands while he was there at work. Q. When was Mr. McCarrell there? A. I rather think he was gone; I won't be positive."

In considering this testimony and in reproducing parts of it, we must be understood as expressing nothing whatever as to its credibility. All we mean is to thus call attention to its materiality as to the issue of negligence. We think the Circuit Judge was in error in granting the motion for a nonsuit.

It is the judgment of this Court, that the judgment of the Circuit Court be reversed, and the action be remitted to that Court for a new trial.

Mr. Justice Gary *dissenting.* Being unable to concur in the opinion of Mr. Justice Pope, I will state briefly the grounds of my dissent. In order to understand what issues are raised by the pleadings, we will set out both the complaint and the answer.

The complaint is as follows: 1. The first paragraph of the complaint alleges the corporate existence of the defendant.

"2. That it was the duty of the defendant to furnish and keep in safe and proper repair the approaches to its buildings, so as to allow its employees and other persons readily, easily and safely to enter and leave its said buildings; but that disregarding its duty in this respect, it knowingly, carelessly and negligently allowed a plank, which had been arranged by the defendant, or which it had allowed to be arranged (and in which arrangement it had for a long time acquiesced), for the purpose of allowing its employees to ascend to a gangway leading into its buildings, and which the employees of the defendant, with its knowledge, acquiescence and consent, used for the purpose of readily, easily entering and leaving its said buildings, to become loose, and to remain so for a long time, so that while in such condition it was dangerous for any one to use it in ascending or descending from said gangway. That on or about the second day of September, 1896, the plaintiff, being then an employee of the defendant, and being ignorant of the fact that the said plank had been allowed to become loose, and relying on the defendant's performing its duty towards its employees, undertook to ascend to the said gangway, by means of said plank, as he had often done before, when suddenly and without warning, the said plank, while the plaintiff was ascending to said gangway for the purpose of attending to his duties, fell, and the plaintiff was thrown violently to the ground." * * *

The answer is as follows: I. The first paragraph admits the corporate existence of the defendant. "II. It admits that one of the approaches to the Victor building was a gangway referred to in the complaint, but alleges that this gangway was strongly and safely constructed, and furnished an easy and safe means of entering and leaving said building; that the said gangway was put up for temporary purposes only, and was used during the construction of said building and placing machinery therein; that the plank referred to in the complaint as having been placed against said gangway was not a part thereof, nor was it constructed or furnished by this corporation as a way of approach to said

building, nor was the use thereof in any way authorized or approved by it. And it denies all the allegations of the second paragraph not admitted herein. III. That at the time referred to in the complaint, the defendant had not commenced business, and the building referred to, which consisted almost entirely of brick work, was being erected for the defendant by Robert McCarrell, an independent contractor, who had agreed to do the work and receive a certain price therefor; that the defendant had no control or authority over the said Robert McCarrell or over any of his employees, or any of the appliances used by them; that the plank referred to in the complaint was not placed against the gangway by the defendant or by its orders, or for the use of any of its employees, but was placed there and was used by the said Robert McCarrell and his employees, and this defendant had no right to object to the use thereof by them. IV. This defendant admits that at the time stated in the complaint, the plaintiff was its employee, and it alleges that he was employed as night watchman, and it was his duty to watch and protect said building during the nighttime; that his duties did not require him to go on said plank; that besides the entrance by way of said gangway, there were others to said building, the doors opening directly from the ground, and all said approaches were easy and safe; that if the plaintiff undertook to approach said building by said plank, it was at his own risk." V. Paragraph 5 sets up the defense of contributory negligence, and denies all the allegations of the complaint not specifically admitted.

At the close of plaintiff's testimony, the defendant made a motion for nonsuit on the ground that there was no testimony to sustain the allegations of negligence, and the practical question presented by the exceptions is whether there was error in granting the order of nonsuit on the ground that there was an entire failure of such testimony. In 16 A. & E. Enc. of Law, 389, actionable negligence is defined as "the inadvertent failure of a legally responsible person to use ordinary care under the circumstances, in observing or

performing a non-contractual duty, implied by law, which failure is the proximate cause of injury to a person to whom the duty is due." The question of negligence is to be determined by the facts of the particular case. In this case the testimony discloses the following facts: 1. The plank was not a part of the appliances provided by the defendant, but was placed against the gangway by an independent contractor, for his use in constructing his part of the work on the building. 2. The appliances furnished by the defendant were safe and suitable. 3. The plank was not used from necessity, but for mere convenience. 4. The appliances were for a temporary purpose. 5. The plank was in no way concealed. 6. It was the duty of the independent contractor to remove the appliances used by him, but even if it was the duty of the defendant to remove them, there is no testimony showing that they were allowed to remain an unreasonable length of time.

We fail to discover in the testimony any facts showing a lack of ordinary care on the part of the defendant, and, therefore, dissent from the opinion of Mr. Justice Pope.