### WOOD v. VICTOR MFG. CO.

1. JURY—NONSUIT—APPLIANCES—NEGLIGENCE—MASTER AND SERVANT—RISKS.—Where the evidence shows that the danger in place furnished employee to work is not apparent but latent, the question of negligence of master should go to the jury. Rule as to when question of negligence should go to the jury and doctrine of assumption of risks stated.

2. A NONSUIT should not be granted where it is based on an assumption of facts in dispute, and in ascertaining this, this Court will consider all the testimony in a case.

Before PURDY, J., Spartanburg, December, 1902. Affirmed.

Action by Wm. A. Wood against Victor Manufacturing Co. From judgment for plaintiff, defendant appeals.

*Messrs. Haynsworth, Parker & Patterson,* and *Simpson*

*& Bomar,* for appellant. The former cite: *Reasonable care is not to be determined from subsequent event:* 88 A. St. R., 833; 55 S. C., 489. *Duty of servant to examine surroundings and use due care:* Bail. M. & S., 168, 158, 162, 172, 175; Whar. on Neg., 214; 74 F. R., 197; 37 A. St. R., 343; 35 N. W., 708; 70 A. St. R., 668; 162 Mass., 258; 21 S. C., 547; 27 S. C., 75; 21 S. C., 93, 541; 55 S. C., 488; 40 La., 341. *Where servant is employed to make premises safer or hazard occurs from progress of his work, the risk is assumed by the servant:* 12 Ency., 957; 20 Ency., 132; 3 Ell. on Ry.; secs. 1293, 1302; 12 C. C. A., 508; 111 U. S., 313; 7 C. C. A., 344.

*Mr. Stanyarne Wilson,* contra, cites: *Rule as to (1) assumption of risks; (2) obvious danger; (3) duty of employer to employee as to. safe place:* 40 S. C., 107; 21 S. C., 548; 52 S. C., 443; 55 S. C., 102, 488; 61 S. C., 486, 494; 62 S. C., 141; 64 S. C., 215; 27 Pac., 728; 41 L. R. A., 77, 127; 132 Ill., 169; 170 U. S., 671; 149 U. S., 386; 34 S. C., 215; 99 N. Y., 368; 116 U. S., 647; 114 S. A., 69; 119 F. R., 496; 27 A. & E. Ry. Cas., 798; 100 U. S., 216. *There being evidence as to negligence, case was properly sent to jury:* 42 S. C., 466; 21 S. C., 546; 63 S. C., 567; 62 S. C., 136.

June 30, 1903. The opinion of the Court was delivered by

MR. JUSTICE GARY. The appeal herein is from an order refusing a nonsuit. The allegations of the complaint material to the consideration of the questions raised by the exceptions are as follows:

"2. That from the month of June, 1899, to the infliction of the injury hereinafter stated, plaintiff was in the service and employ of defendant as carpenter and repair man in and about the cotton mill in said county, and was in such service on December 21st, 1899.

"3. That on said 21st December, 1899, the plaintiff re-

ceived orders from the superintendent of said mill, who represented and had authority over plaintiff, to cut a hole in the floor of the picker room of said mill, about ten inches in diameter, in order that a dust flue could be run through it from the lapper room above to the dust room beneath. That while engaged in so doing, and in the line of his employment, acting as aforesaid under the orders of defendant though its agent and officer, the superintendent, three sacks of starch, weighing each about 280 pounds, fell a distance of about eight feet upon plaintiff's back, crushing him to the floor.

"4. That the injury to the plaintiff by the falling upon him of said sacks was solely due to the gross negligence and carelessness of defendant, its agents and servants, in this: the said sacks had been by it and them negligently placed vertically upon one another, instead of being built across each other in layers, or at least so piled as to incline towards the wall and thereby prevented from falling; and moreover, notwithstanding such recklessly careless piling up of said sacks, of which defendant well knew, containing as they did so slippery a commodity as starch, plaintiff was by defendant placed at work as aforesaid, within three feet thereof, where said sacks could and did fall upon him, without being informed of the danger."

The defendant denied the material allegations of the complaint, and set up the defense of contributory negligence. The jury rendered a verdict in favor of the plaintiff.

The first ground upon which the defendant made the motion for a nonsuit was: "Such danger as was involved in the presence of the pile of starch was open and obvious, and the plaintiff had full opportunity to observe it, hence the danger was assumed by the servant when he undertook the work." Before discussing the testimony, we will state the general principles applicable to such cases. The rule when the facts should be submitted to the jury is thus clearly stated in 16 A. & E. Enc. of Law, 465, *et seq.* (which was quoted with approval in *Rinake* v. *Victor*

*Mfg. Co.,* 55 S. C., 179, 32 S. E., 983), to wit: "The general rule is well known that questions of fact are to be submitted to the jury, and this includes not only cases when the facts are in dispute, but also when the question is as to inference to be drawn from such facts after they have been determined. It will readily be observed that few cases will arise in which there is no question as to the facts involved; the element of ordinary care must from its very character always require the decision of a jury, except where there is a violation of statutory duty or when the facts are undisputed, and but one inference can reasonably be drawn from them. And the same is equally true as to the determination of the question of proximate cause, so that the following rules may be stated as applicable to every case. The issue of negligence should go to a jury: 1. When the facts, which, if true, would constitute evidence of negligence, are controverted. 2. When such facts are not disputed, but there may be a fair difference of opinion as to whether the inference of negligence should be drawn. 3. When the facts are in dispute and the inferences to be drawn therefrom are doubtful."

The following authorities relate to contributory negligence and to the assumption of risks: "The remaining in the master's service by an employee after knowledge of an alleged defect in the instrumentalities to be furnished by the master, is not, *as matter of law,* an assumption of the risks by the employee. Whether the employee assumed the risk is a question for the jury, to be determined from all the circumstances of the case. If the undisputed evidence is such as to be capable of but one inference, viz: voluntary assumption of the risk by the employee, then the jury would be rightfully instructed that the employee could not recover." *Mew* v. *R. R.,* 55 S. C., 101, 32 S. E., 828: "It is the duty of the master to provide suitable machinery and appliances, and keep them in proper repair. The employee has a right to assume that the master has discharged his duty in this respect, and is not bound to exercise care in

ascertaining whether the master has so acted. When, however, the employee has knowledge or receives warning that the master has not furnished suitable machinery or that it has not been kept in proper repair, so that it has become dangerous, and he continues to use the same after such knowledge or warning, then it is a question to be determined by the jury whether under the circumstances the employee failed to exercise ordinary care and prudence, and was, therefore, guilty of negligence." *Bussey* v. *R. R. Co.,* 52 S. C., 443, 30 S. E., 477. "The doctrine of assumption of risks by the employee is distinct from the doctrine of contributory negligence, although there may arise a certain condition of facts capable of supporting either inference. This has given rise to a great deal of confusion of statement when dealing with these defenses. 'Assumption of risk,' rests in the law of contract, and involves an implied agreement by the employee to assume the risk ordinarily incident to his employment, or a waiver after full knowledge of an extraordinary risk of his right to hold the employer for a breach of duty in this regard. *Hooper* v. *R. R.,* 21 S. C., 547. The law as to waiver applies because the relation between the employer and employee is contractual, and waiver is the voluntary relinquishment of a known right. By the contract the employee and employer each assume certain risks; but as in all contracts either party may waive his right to insist upon strict performance of the other's contractual duty. When, therefore, a case arises in which it is shown (upon proper pleading) that the employee has assumed the risks from which the injury arose, or, what is the same thing, in effect, has waived his right to hold the employer responsible for the risk, the employee's action is defeated because of his agreement, and not because of negligence. 'Contributory negligence,' on the other hand, rests in the law of torts as applied to negligence, and when such defense is established, the plaintiff's action is defeated, not because of any agreement, express or implied, but because his own misconduct was a proximate cause of the injury."

*Bodie* v. *R. R.,* 61 S. C., 478, 39 S. E., 715.   See, also, *Chase* v. *Spartanburg,* 64 S. C., 212.

We quote somewhat at length from the case of *Texas & Pac. Ry. Co.* v. *Archibald,* 170 U. S., 671-673, because it is a clear statement of an important principle, as follows: "The elementary rule is that it is the duty of the employer to furnish appliances free from defects discoverable by the exercise of ordinary care, and that the employee has a right to rely upon his duty being performed, and that whilst in entering the employment he assumes the ordinary risks incident to the business, he does not assume the risk arising from the neglect of the employer to perform the positive duty owing the employee with respect to appliances furnished. An exception to this general rule is well established, which holds that where an employee receives for use a defective appliance, and with knowledge of the defect continues to use it without notice to the employer, he cannot recover for an injury resulting from the defective appliance thus voluntarily and negligently used.   But no reason can be found for and no authority exists, supporting the conclusion that an employee, either from his knowledge of the employer's methods of business or from a failure to use ordinary care to ascertain such methods, subjects himself to risks of appliances being furnished which contain defects that might have been discovered by reasonable inspection.   The employer, on the one hand, may rely on the fact that his employee assumes the risks usually incident to the employment.   The employee, on the other, has the right to rest on the assumption that appliances furnished are free from the defects discoverable by proper inspection, and is not submitted to the danger of using appliances containing such defects, because of his knowledge of the general methods adopted by the employer in carrying on his business, or because by ordinary care he might have known the methods and inferred therefrom the danger of unsafe appliances as might arise.   The employee is not compelled to pass judgment upon the employer's method of business or to conclude as

to their adequacy.   He has a right to assume that the em-
ployer will use reasonable care to make appliances safe and
to deal with .those furnished, relying on this fact, subject,
of course, to the exception which we have already stated,
by which, where an appliance is furnished an employee in
which there exists a defect known to him or plainly ob-
servable by him, he cannot recover for an injury caused by
such defective appliance, if with the knowedge above stated
he may negligently continue to use it.   In assuming the
risks of the particular service in which he engages, the em-
ployee may legally assume that the employer, by whatever
rule he elects to conduct his business, will fulfill his legal
duty by making reasonable efforts to furnish appliances
reasonably safe for the purposes for which they are in-
tended; and whilst this does not justify an employee in
using an appliance which he knows to be defective or relieve
him from observing patent defects therein, it obviously does
not compel him to know or investigate the employer's modes
of business under the penalty, if he does not do so, of taking
the risk of the employer's fault in furnishing him unsafe
appliances."

While it is true that the manner in which the sacks were
piled was obvious and open to common observation, never-
theless the testimony on both sides showed that the *danger*
was not apparent, and that if it existed it was latent.

The plaintiff testified as follows: "Q. State whether Mr.
Burgess, superintendent, called your attention to the way
in which those bags were constructed?   A. No, sir; he
didn't call my attention about the way it was packed at all.
Q. State whether or not you noticed that those bags were
put up this way and were not put crosswise?   A. I noticed
all the time, but I didn't think there was any danger—didn't
think about any danger.   The starch was that way when
I moved there; don't know how long it had been there.   Q.
How long had that starch been there?   A. I can't tell.   Q.
Did you believe it was a safe place to work?   A. I thought
so.   If I hadn't I would not have worked there."

A. J. Burgess, who was superintendent of the mill at the time of the accident, testified in behalf of the defendant as follows: "Q. The starch was there where he could see it? A. Yes, sir. Q. State whether or not Mr. Wood was not in just as good a position to see the bags and to know how they were fixed as you yourself were? A. I should think anybody could see as well as I could; any man that had eyes—nothing to keep him from seeing them—right there before him. Q. State whether or not there was any reason to apprehend any danger. A. Of course, I didn't think there was any danger, nor did he either. Q. I want you to tell the jury whether or not you were in that room constantly, and standing against and near the starch? A. I passed by the starch anywhere from twice to half a dozen times a day. Q. Tell the jury whether or not you had any reason to apprehend danger from the starch? A. I didn't have any at all. I possibly might have been leaning against the starch, as Mr. Wood said I was. I don't remember leaning against it, but I was just as apt to lean against it as not. I didn't suppose there was any danger in it whatever."

Applying the principles hereinbefore stated to the facts of this case, it will at once be seen that the first ground of the motion for nonsuit was properly overruled.

The second ground of the motion was as follows: "The danger being open to common observation, and there being no evidence to show that the defendant knew, or ought to have known, of any want of knowledge of the danger on the part of the plaintiff, it follows that there was no duty on the defendant to give warning." This ground, as we have shown, is based upon an assumed state of facts which could only be properly determined by the jury, and it was also correctly overruled.

The third ground of the motion was as follows: "It appearing that the place was rendered unsafe made by the progress of the work which plaintiff was doing, the risk thereof was one assumed by plaintiff." This ground like-

wise assumes a state of facts which were in dispute and which, therefore, could only be decided by the jury. Barney Wingo, a witness for the plaintiff, testified as follows: "Q. You saw the pile when it began to fall? A. Yes, sir, I saw it just as it started to fall. Q. What made it fall? A. I can't say. Q. You couldn't see anything that made it fall? A. No, sir. Q. It just started to fall of its own notion? A. I can't say. Q. You didn't see anything to make it fall? A. I couldn't see anything where I was." There was also other testimony introduced upon this question. It was, therefore, properly overruled.

The fourth ground is as follows: "The master is not bound to employ the safest methods, but only such as a reasonably prudent man would employ. There is no evidence to show that the sacks were not piled in a reasonably prudent manner." The plaintiff gave testimony tending to show that the sacks were not piled in a safe manner, and in reply to this testimony the defendant examined several witnesses for the purpose of showing that the sacks were piled in a safe and proper manner. The rule is well settled in this State, that the Supreme Court will not only consider the testimony introduced by the plaintiff on determining whether the nonsuit was properly refused, but will likewise consider all the testimony in the case. By reference to the testimony it will be seen that the question whether the sacks were piled in a reasonably prudent manner was hotly contested. Under these circumstances, this ground was correctly overruled.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.