7610

### TINDALL v. COLUMBIA MILLS CO.

Master and Servant—Assumption of Risks—Issues.—Under evidence that master furnished the servant a plain iron top table, furnished with a saw, to saw and rip boards on, without a carriage, feeder, gauge or any device for holding the boards, and that such a machine was dangerous and unsafe, and that other masters furnished them with feeders, but that the danger was obvious and the servant had been warned of it, and that he had been operating it for about three weeks before the accident, it was proper to send the issues of whether the master furnished a safe and suitable appliance, and whether the servant assumed the risk to the jury.

Mr. Chief Justice Jones and Justice Woods *think nonsuit should have been granted on ground that servant assumed the risk.*

Before Klugh, J., Richland, May, 1910. Affirmed.

Action by B. F. Tindall against Columbia Mills Co. From judgment for plaintiff, defendant appeals.

*Messrs. Shand & Shand,* for appellant, cite: *Assumption of risks:* 21 S. C., 547; 20 At. R., 552; 4 Id., 181; 55 S. C.,

488; 69 S. C., 109; 72 S. C., 348, 242; 80 S. C., 238; 1 At. R., 575; 211 U. S., 459.

*Mr. A. F. Spigner,* contra, cites: *Evidence of plaintiff's claim is for jury:* 21 S. C., 101; 55 S. C., 180.  *Duty of Master:* 72 S. C., 269.  *Assumption of risks:* 72 S. C., 402; 71 S. C., 80; 64 S. C., 214; 51 S. C., 234; 18 S C., 281.

July 11, 1910. The opinion of the Court was delivered by

Judge Ernest Gary, *acting Associate Justice in place of* Mr. Justice Hydrick, *disqualified.*

This is an action on the part of the plaintiff to recover of the defendant damages for injuries alleged to have been received while performing the duties of an employee of the defendant company, in making and repairing boxes and sawing planks and boards by means of a circular saw in defendnt's mill, on the 22d day of January, 1907, the plaintiff contending and alleging that such injury was the result of defendant's negligence in providing an unsafe and defective piece of machinery, in that

(1) The saw was unnecessarily exposed and without adequate guards.

(2) The saw should have been provided with a carriage to convey planks and boards and hold them in place while being sawed.

The answer of the defendant denied any negligence, and in the sixth paragraph thereof set up as a defense, that the injury done to plaintiff was caused by one of the ordinary risks of his employment at the machine from which he received his injury, at which he had been working for some time previous, and the conditions of which were well known to him, and that he assumed this risk and all other ordinary risks by taking and keeping employment at this machine.

Upon the issue so framed, the cause was tried by Judge Klugh and a jury on the 11th day of May, 1909, resulting

in a verdict for plaintiff for two hundred and twenty-five ($225) dollars. * * * At the conclusion of the plaintiff's testimony, the defendant's attorneys moved for a nonsuit on the ground that no negligence had been shown and that the testimony showed that the plaintiff was the servant of the defendant, and assumed the ordinary risk of his employment; that he worked for three weeks with the saw which cut his thumb, and the danger of permitting his hand to come in contact with the saw was obvious to any person of ordinary intelligence; that he had been specially warned; that the injury received by plaintiff was one wholly due to his own carelessness and want of care; that the negligence of the plaintiff, co-operating with the negligence, if any, of the defendant, as shown by the testimony, contributed to the injury as the proximate cause thereof.

This motion was refused. The defendant has appealed to this Court from the verdict so rendered. The exceptions directly raising the issues of law are as follows:

1. "That his Honor erred in refusing the nonsuit asked for by defendant, at the close of plaintiff's testimony, because:

(a) No negligence by defendant had been shown. (b) The injury was one of the risks assumed by plaintiff as the servant of the defendant, which risk was obvious to the senses and as to which he had been especially warned and had full knowledge. (c) The negligence of the plaintiff contributed to his injury as a proximate cause thereof.

2. "That under the defendant's plea of assumption of risk, and the testimony in the case, his Honor erred in charging the jury that 'while a servant in the scope of the business for which he is employed must use his eyes and see what an ordinary man would see, yet if the machinery is defective the master can not escape liability if such servant is injured thereby,' by which charge the master was declared liable, even though the servant had full knowledge of the defect in the machinery, was not specially directed to use

18—86

it, made no complaint nor objection to its use, and had no promise of correction from the master."

Upon the hearing of the appeal, the Court limited the arguments of counsel to two questions:

(First). Was there error on the part of the Circuit Judge in refusing defendant's motion for a nonsuit?

(Second). Was the injury one of the risks assumed by the plaintiff as the servant of the defendant, which risk was obvious to the senses and as to which plaintiff had been especially warned and had full knowledge?

Should the defendant's motion for nonsuit have been granted? In considering this question let us recur to the issue of negligence tendered by plaintiff to defendant. The allegation of the complaint is "they provided an unsafe and defective piece of machinery, in that (1) the saw was unnecessarily exposed and without adequate guards; (2) the saw should have been provided with a carriage to convey planks and boards and hold them in place while being sawed."

The general rule in this State is, that where there is any competent testimony upon the material allegations of the plaintiff's complaint, a nonsuit should not be entered. Having shown the issue submitted to the jury, viz.: that the rip saw was unnecessarily exposed and without adequate guards and that the saw should have been provided with a carriage to convey planks and boards and hold them in place while being sawed, it only remains to ascertain from the record whether there was any competent testimony on the above issue to submit to a jury. Of course, if there is no competent testimony on a material fact, there is nothing to submit to a jury, and in that event a nonsuit should be ordered. In the printed brief the plaintiff testified:

"Q. It was your duty to do what? A. I had to rip the board the right height and fill that place. I was ripping the board through the saw; I run the board through the saw, and when I got it through I went to remove the piece

on the left hand side * * * Q. What caused your thumb to come in contact with that saw? A. It was the piece that had been sawed off that threw it in. Q. What caused that? A. It had nothing to hold it; I had to press this lumber through. Q. Had to push it through? A. Had to shove it through. Q. The saw caught the piece sawed off and threw your hand in? A. That's right. Q. If there had been a carriage, rather, feeders of some kind that would have held the board in place and pushed it through without the assistance of your hand, would there have been any danger in operating such a saw? A. No. Q. If that saw had been devised like that, state whether or not you would have lost your finger? A. No; I would not. Q. Did that saw have any guard or protection over it? A. No, sir."

Geo. M. Dickert, a witness for plaintiff testified:

"Q. Are you familiar with the circular or rip saw that you have heard testified to today? A. I think I am. Q. For how many years have you had occasion to come in contact with them? A. About fifteen or eighteen years. Q. State whether, in your opinion, the rip saw such as you heard described, this man was hurt on, plain iron top table, having only a guage bar on which you are expected to grasp board by both hands and push it through, having no carriage, feeders or device of any kind to hold the board in place, would be safe and reasonable and suitable appliance for ripping boards? A. No, sir. Q. Why? A. Not anything there to hold the board down. Q. State whether such a saw would be dangerous and unsafe. A. Yes, sir; dangerous all right."

J. W. Dunn testified: "Q. What is your business? A. Section foreman for the Southern Railway. Q. Have you had any experience with rip and circular saws, such as have been described here today? A. Six years. Q. State whether in your opinion, a saw, such as you heard this man was hurt on, with a smooth iron table and guage bar, on which

you put the board and hold it, push it through, is a safe and suitable appliance for ripping boards? A. Could not be. Q. Why? A. A simple reason; you are pushing that board having no carriage, feeders or device of any kind to hold that board in place.? Q. Would be a safe and reasonable and suitable appliance for ripping planks and boards? A. Would not. Q. Why not? A. From the simple fact got nothing to hold your material down while passing through the saw."

James Hutto, another witness, testified: "Q. What is your experience with them? A. Have had about seven years' experience with them. Q. State whether or not in your opinion, a saw such as you heard described, on which this man got his hand cut, smooth iron top and guage bar, on which he is expected to place the lumber with his hand, hold and push it through, would be reasonably safe and suitable and liable to close on the saw, or strike a knot, and the saw revolving about, liable to catch that board and either jerk your hand on the saw or hit you in the face?"

To the same effect was the testimony of W. M. Gerald.

In view of this testimony how can it be successfully contended that there was no competent testimony on the point of negligence on the part of the master in failing to furnish the servant with a saw that was unnecessarily exposed and without adequate guards, and that a saw should have been provided with a carriage to convey planks and boards and hold them in place while being sawed?

We are of the opinion that it would have been error on the part of the Circuit Judge to have withheld from the jury this issue of fact.

This exception must, therefore, be overruled. *Rinake* v. *Mfg. Co.,* 55 S. C., 180, 32 S. E., 983.

The second point is: should the nonsuit have been granted on the ground that plaintiff assumed the risks of the machine, on which he had worked for three weeks, with the dangers of it obvious, and that he had been spe-

cially warned to be careful; that the accident was the result of his own carelessness; that he contributed to his own injury, and that the alleged acts of negligence had not been shown to exist.

This exception directly raises the issue as to what duty is incumbent upon the master. In *Biggers* v. *Catawba Power Co., 72* S. C., 264, 51 S. E., 882, the Supreme Court of this State defined such duty to be: (1) To furnish safe and suitable appliances, and to see that they are kept in proper order; (2) to provide a safe place to work * * * . When there is a failure to perform any of those duties, and a servant is injured, as a direct and proximate result of such failure, it constitutes *prima facie* evidence of negligence on the part of the master.

The allegation of the complaint is, that the defendant provided an unsafe and defective piece of machinery, in that the saw was unnecessarily exposed and without adequate guards. That the saw should have been provided with a carriage to convey planks and boards, and hold them in place while being sawed. To this machinery as thus constructed the plaintiff offered testimony as to whether it would be reasonably safe to operate it.

To have granted the motion on this ground, the trial Judge must of necessity have decided the question of fact, that the saw was not unnecessarily exposed; that the guards were adequate, and that it was not necessary for it to have been supplied with a carriage, etc.

And this finding must also have been made in direct conflict with the testimony of a number of plaintiff's witnesses, familiar with such machinery.

It appears that the trial Judge adopted the correct practice in refusing defendant's motion, and in submitting the issue to the jury.

It is therefore ordered that the judgment be affirmed.

MR. JUSTICE GARY *concurs in this opinion.*

Mr. Chief Justice Jones *dissents and concurs in the separate opinion of Mr. Justice Woods.*

Mr. Justice Woods, *dissenting.* The complaint alleges: "That at the times hereinafter mentioned, the defendant was carrying on the business of manufacturing cotton cloth in its cotton mill in Richland county, in the State of South Carolina, and commonly called the 'Duck Mill;' and the said B. F. Tindal, plaintiff herein, was in the employ of the said defendant in its cotton mill, and was at work engaged in making and repairing boxes and sawing planks and boards by means of a circular saw when he was wounded, injured and made sick by the negligence, carelessness and wantonness of the defendant, as follows: On or about the 22d day of January, 1907, plaintiff was engaged in making and repairing boxes and sawing planks and boards by means of a circular saw, and while thus engaged the said circular saw, which the plaintiff was operating, caught the thumb of plaintiff's left hand and cut it off, and he was seriously injured thereby, his nervous system severely shocked, and he was made sick and suffered great bodily pain and mental anguish, was permanently injured for life, and suffered the loss of his left thumb. That the defendant company, not regarding their duty to the plaintiff, conducted themselves so carelessly, negligently, wantonly and unskilfully in this behalf: They provided an unsafe and defective piece of machinery in that (1) the saw was unnecessarily exposed, and without adequate guards; (2) the saw should have been provided with a carriage to convey planks and boards and hold them in place while being sawed."

In the sixth paragraph of the answer, the defendant sets up assumption of risk as follows: "Further answering, defendant alleges that the injury done to plaintiff was caused by one of the ordinary risks of his employment at the machine from which he received his injury, at which

he had been working for some time previous, and the conditions of which were well known to him, and that he assumed this risk and all other ordinary risks by taking and keeping employment at this machine."

There was evidence that the circular saw which cut off the plaintiff's thumb was without a feeder or carriage, and that some. circular saws were made safe by having feeders and carriages attached. But the evidence on the part of the plaintiff was that the danger of operating this saw was perfectly obvious; that he had been specially warned of the danger by the foreman of the shop, and that he had been operating it for three weeks before the accident happened. Under these facts it seems to me impossible to escape the conclusions that the plaintiff assumed the risk of the operation of the saw. In *James* v. *Fountain Inn Mfg. Co.,* 80 S. C., 238, 61 S. E. 391, the Court said: "Assumption of risk rests in the law of contract and involves an implied agreement by an employee to assume the risks ordinarily incident to his employment, or a waiver after a full knowledge of an extraordinary risk of his right to hold the employer for a breach of duty in this regard. *Bodie* v. *Charleston etc. Ry. Co.,* 61 S. C., 468, 39 S. E., 715. Under the law governing this subject, an employee may exercise the utmost care in the situation and yet be held to have assumed the risks incident to his employment. On this point rests the strength of the appeal. The testimony will not admit of any other reasonable inference than that plaintiff, with full knowledge of the danger, assumed the risks involved in voluntarily operating the machine."

This well established rule of the common law as to the assumption of risk has been recently elaborated and applied by the Supreme Court of the United States in *Butler* v. *Frazee,* 211 U. S., 459, 53 L. Ed., 281. This was the doctrine on which the Court decided *Martin* v. *Royster Guano Company,* 72 S. C., 237, 61 S. E., 680, and *Wofford* v. *Clinton Cotton Mills,* 72 S. C., 346, 51 S. E., 918. Unless

these cases are to be overruled, it seems to me that the plaintiff assumed the risk, and that the nonsuit should have been granted on that ground