13009

JAMES v. GAFFNEY MANUFACTURING CO.

(155 S. E., 588)

November, 1929.

*Messrs. T. B. Butler* and *W. S. Hall,* for appellant.

*Messrs. John K. Hamblin* and *Barron, Barron & Barron,* for respondent,

October 25, 1930.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

This is an action for damages for personal injuries alleged to have been sustained by the plaintiff while in the employment of the defendant company.

The complaint alleges that on or about March 28, 1922, while working as a roll coverer and belt man in the defendant's weave room, the plaintiff fell from a wooden bench, sometimes called a "work horse," from which he was working, a distance of about seven feet to the floor, and was thereby seriously and permanently hurt. It was further alleged that his injuries were proximately caused by the negligence and willfulness of the defendant in the following respects, among others:

"In not furnishing plaintiff a safe place in which to work in that the said wooden bench or 'horse' was made of de-

fective lumber in that it contained a knot, causing the leg of the said 'horse' to break, thereby causing the injury and damage as aforesaid.

"In not inspecting the place, appliances and machinery, as aforesaid, as an inspection would have revealed the defects.

"In not instructing plaintiff as to dangers of said appliances, machinery and place, as aforesaid, which was not evident to plaintiff and of which he was unconscious, thereby causing the injury and damage, as aforesaid."

The defendant, answering, pleaded the defenses of contributory negligence and assumption of risk.

The record contains the following statement as to some of the testimony adduced on trial of the case:

"Among other things, plaintiff testified that the wooden horse or bench on which he was standing gave way, causing him to fall and sustain the injuries set forth in the complaint. He further testified that immediately after sustaining such fall he discovered the alleged knot in the leg of the said wooden horse or bench, which caused it to break and give way, causing his fall and injuries, and that he had no previous knowledge before such fall of the knot in the leg of the wooden horse or bench, which caused its weakened condition, and that the same was covered by dirt, grease and paint, which concealed the same.

"On behalf of the defendant, witnesses were produced who testified that the wooden horse or bench, when constructed. was made out of sound material; that the cross beams were constructed of heavy timbers two inches thick, six inches wide, eight feet long; that the legs were constructed out of two-by-four timbers and braced, and that they had never discovered any defect or knot hole in the wooden leg, either before or after the injury. and never heard of any such claim being made, or of any such defect, until some years afterwards at the time of the commencement of this action,

and that no wooden horse or bench with a broken leg of any kind had ever been discovered or reported to the machine shop."

The jury found for the plaintiff, and from judgment entered on the verdict, the defendant appeals.

The appellant, by its first and second exceptions, complains of the following portions of the charge of his Honor, Judge Johnson, who presided at the trial: "The law imposes upon the person suing, called the plaintiff, the burden of proving his case by the greater weight of the evidence, and, therefore, I must define that term greater weight of evidence to you, and I charge you that the greater weight of the evidence means nothing more or less than the greater weight of the truth as you, the jury, find the truth from the testimony adduced upon the witness stand. * * *

The question is, where does the greater weight of the truth lie, and where the jury finds the greater weight of the truth to lie, there lies the greater weight of the evidence."

The contention is that under this charge the jury could find actionable negligence on the part of the defendant to be true, and could also find contributory negligence and assumption of risk on the part of the plaintiff to be true; and that it would thus become their duty to weigh these truths and determine which was the heavier, resulting in the adoption of the rule of comparative negligence in a confused manner.

This contention is without merit. In making the charge to which the appellant objects, the Court was not instructing the jury as to contributory negligence or assumption of risk, but was charging them as to the degree of proof imposed by law on the plaintiff in making out his case. He further told them, in defining the term, that the greater weight of the evidence did not mean, or depend upon the swearing of the greater number of witnesses, for the jury might find the truth to lie in the mouth of a single witness in the case. Following this charge, he told them what it would be neces-

sary for the plaintiff to prove before he could recover, and later he instructed them fully and clearly as to contributory negligence and assumption of risk. When these portions of the charge are considered together, it is difficult to see how the jury could have been misled or confused by the instructions complained of; certainly, they could not have been confused in the manner and for the reasons stated by the appellant. We see no error as alleged in these exceptions.

The third exception alleges error in the following instruction: "So, also, the master need not warn a servant of a risk naturally incident to his employment, unless he knows the servant is ignorant thereof. But if the circumstances in which the servant is required to work, or the appliances with which he is required to work contain what is known as a latent defect, or a latent danger which isn't obvious, and can't be seen, why, of course, it is the duty of the master to warn the servant of such latent or hidden danger or defects."

The appellant contends that this charge made the impression on the minds of the jury that it was the plain duty of the master to warn the servant about latent or hidden defects, regardless of whether they were known to the master or could have been known to him by the exercise of due diligence, and especially urges that the Court laid upon it the extraordinary burden of discovering a defect that "can't be seen"—an obvious impossibility.

In *Chase v. Electric Co.*, 64 S. C., 212, 41 S. E., 899, 901, this Court said: "But as the law imputes to the master the knowledge of the danger, even though latent, in the use of the instrumentalities with which he provides his servant, he cannot escape liability by showing he was ignorant of this fact, unless he should further show that by the use of due diligence he could not have discovered the danger."

In the case at bar, the trial Judge charged that, where a servant is set to work at a dangerous place, or with dangerous appliances or machinery, and the master knows, or

ought to know, that the servant is not aware of the danger, it is his duty to warn him, and it is negligence on his part not to do so; but that "where the servant knows or has notice of the dangerous nature of the situation in which he is required to work,or of the appliances which he is to use, it is not necessary for the master to warn him." And then, in the same connection, he gave the instruction objected to, which was a charge, in effect, that the same rule applied where machinery or appliances with which the servant is required to work contain a latent defect or danger. Standing alone, this instruction would have been erroneous; but we do not think that, when considered with all the Court said with reference to the assumption of risk, it had the effect contended for by the appellant. Nor do we think that the expression, "can't be seen," used by the trial Judge, imposed upon the defendant, as contended, the duty of doing an impossible thing. As "latent" means hidden or concealed, the Court merely intended to tell the jury and correctly did so, by the use of the phrase objected to, that a defect is latent when not visible or apparent, and we are satisfied the expression was so understood by them.

But even if error, the charge did no harm. The plaintiff alleged, and adduced testimony tending to prove that the "wooden horse" from which he fell and was injured contained a defect due to a knot in one of its legs, which caused it to break and give way. The knot, according to his testimony, could not be seen by him for the reason that it was covered with grease and dirt. The company, however, could not claim that such defect, if it did exist, was latent or hidden so far as it was concerned, or could not have been discovered by the exercise of due diligence, for the reason that the testimony was undisputed that the bench or "horse" had been constructed by the defendant from its own lumber.

The judgment of this Court is that the judgment of the Circuit Court be affirmed.

We also affirm the order of the trial Judge settling the "case" for appeal, to which the defendant made exception.

MESSRS. JUSTICES BLEASE and CARTER concur.

MR. JUSTICE COTHRAN (dissenting) : I do not think that an authority can be found anywhere that sustains the charge referred to in the third exception, to the effect that, if an appliance, supplied by the master, contains a latent defect, which is not obvious *"and can't be seen,"* it is the duty of the master to warn the servant of such latent or hidden defect.

The law as I understand it, is as laid down in the case of *Texas & P. R. Co. v. Archibald,* 170 U. S., 671, 18 S. Ct., 777, 42 L. Ed., 1188, cited and quoted from at length, with approval, in the case of *Wood v. Mfg. Co.,* 66 S. C., 482, 45 S. E., 81, 82: "The elementary rule is that it is the duty of the employer to furnish appliances *free from defects discoverable by the exercise of ordinary care.* * * * The employee * * * has the right to rest on the assumption that appliances furnished are free from *the defects discoverable by proper inspection."* (Emphasis added),

The logical effect of the charge complained of is that, if there is a defect in an appliance, latent, not obvious, "that could not be seen," regardless of the plainly circumscribed duty of the master above set out, to exercise reasonable care in detecting it, the master is liable for the consequent injury.

A recent discovery is claimed of an alloy that will make impossible the presence of air bubbles in all kinds of cast iron appliances, wheels, shafting, rods, etc. There cannot be conceived a defect that would be less obvious, "that could not be seen." Under the rule announced, the master would be charged with the duty of warning a servant of the presence of such a defect, when it would be impossible with the exercise of superhuman care to discover it.

It seems to me that the law is perfectly plain and simple and adequately protects a servant injured in the use of an appliance furnished by the master. It the appliance, causing the injury, be shown to have been defective, the presumption

of negligence attaches to the master, and the burden is cast upon him to show as a defense that he had exercised due care in the inspection of the appliance and had not discovered the defect. The charge imposes upon him the absolute duty of warning the servant of the unseen defect regardless of the legal defense that it had not been discovered after the exercise of due care under the circumstances. I can find nothing in the charge which relieves the error.

In *Roberts v. Co.,* 84 S. C., 283, 66 S. E., 298, the Court held that, where latent dangers are or should be known to the master, and he knows, or should know by exercising ordinary care, that a servant does not know of them, he must warn the servant of such dangers.

In *Berley v. Tel. Co.,* 82 S. C., 360, 64 S. E., 157, the Court held that an employer is bound to notify an employee of risks arising from hidden or secret causes, where he knows of them himself, or by the exercise of ordinary care ought to have known of them.

The foundation of the master's liability is not simply the presence of a defect in an appliance, but it is in his negligence in not discovering it and then warning the servant of its presence. While, as stated, evidence that the servant was injured by reason of a defective appliance throws the burden of exculpation upon the master, the exculpation becomes complete when he shows that by the exercise of ordinary care the defect could not have been discovered.

In *Turner v. Mfg. Co.,* 97 S. C., 112, 81 S. E., 430, the Court said: "The doctrine is well settled here that, in a case like this, the untoward event which works injury does not of itself raise the presumption of a defective machine, and therefore of negligence by the master; but there must be other testimony, direct or circumstantial, that the loom injured the weaver because it was defective in its parts, and that such defect was the result of the master's neglect."

The charge eliminated all possibility of the defendant

showing the absence of negligence, assuming proof of the defective appliance, and that it caused injury.

The fact that the lumber for the "horse" was supplied by the defendant, and the appliance was framed by its employees, has no bearing upon the correctness or incorrectness of the charge. It would have a bearing upon the question whether due care was exercised to discover the danger from the alleged defect—a matter for the jury.

It was also a matter for the jury whether the knot in the plank constituted such a defect as would naturally and probably cause a break of the support.

For these reasons I think that the judgment should be reversed.