[No. 6375. Decided November 20, 1906.]

JOHN SCHWANINGER, *Respondent*, v. E. J. McNEELEY & COMPANY, *Appellant.*[1]

MASTER AND SERVANT—NEGLIGENCE—SAFE APPLIANCES—INSTRUC-TIONS. An instruction that the master is not an insurer of the safety of its employees, but that the law requires that it furnish a safe place, etc., sufficiently complies with the request for an instruction that it is not an insurer of the safety and sufficiency of the appli-ances employed, and was not required to anticipate accidental hap-penings.

SAME—COMPLIANCE WITH FACTORY ACT. Where an action for in-juries sustained through the failure to maintain reasonable safe-guards is tried as an action at common law without any reference to the factory act, it is not error to refuse an instruction to the effect that no statute required the use of such safeguards.

SAME—DUTIES OF SERVANT—INSTRUCTIONS. An instruction relat-ing to the duty to warn a servant of unknown dangers, where he is called from his ordinary duties, is sufficiently within the issues where a servant, whose regular duty was that of fireman, was injured in the adjustment of a belt, through dangers unknown to him, where he had been employed but a short time, although he had frequently adjusted the belt; as the complaint may be presumed amended to conform to proof of such facts, admitted without objection.

TRIAL—INSTRUCTIONS AS TO ISSUES. It is not error to fail to in-struct specifically that the defendant controverted the material facts of the complaint by denials, where it appears that the jury must have so understood the issues.

MASTER AND SERVANT—FELLOW SERVANTS. There is no question of fellow servant involved where an employee was injured by defects in appliances causing the throwing of a belt, merely by reason of the fact that a witness thought the accident due to the inexperience of another employee who adjusted the belt upon the pulley on the floor above, where it appears that the accident did not occur until

[1]Reported in 87 Pac. 514.

after such adjustment had been made and when the two employees were doing nothing in common; and where the act of such co-employee could not have caused the injury irrespective of the negligence of the master.

Appeal from a judgment of the superior court for Pierce county, Huston, J., entered December 9, 1905, upon the verdict of a jury rendered in favor of the plaintiff for personal injuries sustained by a fireman through defective appliances in a shingle mill. Affirmed.

*Hudson & Holt*, for appellant.

*Frank C. Park, Ellis & Fletcher*, and *R. E. Evans*, for respondent.

HADLEY, J.—This is an action to recover damages for personal injuries. The plaintiff was in the employ of the defendant as fireman in its shingle mill. He was required to shovel sawdust, shavings and pieces of slabs into the stoke holes of the three boilers situated in the mill. He worked upon an elevated platform, raised above the first floor of the mill so as to bring the platform, with openings therein, over the stoke holes through which the fuel was thrown into the ovens. The fuel was deposited upon the platform by conveyors. Running parallel with the ovens and the platform was a main line shaft, which was about two feet above the platform, and was fastened to a large perpendicular post at the end of the platform. Attached to this shaft was a pulley, eight inches wide and at least twenty inches in diameter, which was located near the large post. An eight-inch belt ran from this pulley to a large pulley on the floor above, which propelled a long shingle block conveyor that brought blocks over from the sawmill to the shingle mill. The shaft of the pulley above was not directly over the other one, but was so situated that the belt ran at a slight angle. A two-by-six board was nailed on the floor above, under the upper pulley and across the opening through which the belt ran, so that when the

belt was thrown from the upper pulley, it dropped down and hung across this board, and the slack of the belt fell down on the pulley below. The lower pulley revolved rapidly and would burn the belt when the slack hung on it. Plaintiff was instructed to hang the belt on a peg above the pulley when it was thrown from the upper pulley, in order to save it from burning. The shingle block conveyor consisted of a long, heavy chain, which was drawn through a conveyor box.

The testimony submitted by the plaintiff was to the effect, that the conveyor box was worn and that there were holes in it in which blocks would catch; that at times the chain would catch on the sprocket wheels; that pieces of iron were nailed over the holes in the conveyor box, which became loose, and that the chain would catch on them; that sometimes blocks would catch between this conveyor and a cross-conveyor and throw the chain from the sprocket wheels; that, whenever the conveyor chain was caught, the belt was either thrown from the upper pulley or something would break; that the conveyor had caused annoyance of this kind for several months prior to the accident, and that some days the belt was thrown off, by the catching of the chain, a number of times. It was also testified that the most of the belt was practically new, but that a part of it was old and worn and in some places soft and thin; that when the belt came off above, the plaintiff hung it on the peg below to keep the pulley from burning it, but that when they wished to have it put on the pulley some one shouted to him from above or motioned to him, and he would take the belt off the peg and place it upon the pulley; that with his hands he kept it from running off sideways until some one above would adjust it to the upper pulley, when it would start running, and he would then turn around to his work of shoveling fuel some six feet away; that when the belt came off above and the soft parts happened to strike the pulley, the revolving of the pulley had a tendency to wind it over and fold it around the pulley.

It was testified that at the time of the accident some one shouted·to the plaintiff to put on the belt; that he took it off the peg, placed it around the pulley, kept it steady with his hands until it was placed on the pulley above, and that it then started to run; that when it started to run, he stood up and turned to his work; that when he had so turned, his right side was toward the pulley; that the belt came off above, fell down on the two-by-six board, and the pulley below; that the slack wrapped around the lower pulley, the belt jerked the two-by-six board from its place, tore the upper floor, struck plaintiff on the right side, threw him across the platform, and nearly into the fire holes. The platform and sawdust conveyors were also torn and shattered. Plaintiff's injuries were of a serious and permanent character. His right foot was crushed, the bones of his right leg were broken in several places, several ribs and his lower jaw were broken, and his flesh was much bruised on the right side of his body. Some of the .above-stated facts were denied and disputed by the defendant's evidence, but we have stated facts which appear in evidence.

·The complaint alleges that the accident occurred a few days after the plaintiff began to work at that place; that he was unacquainted with the construction of the mill machinery; that his duties as fireman absorbed his whole attention; and that he had neither time nor opportunity to examine or observe the working or manner of construction of said machinery. He charges the defendant with negligence in not providing safeguards for the belt and pulleys. He also alleges that the conveyor which was operated by the belt was heavy and cumbersome, and that the belt and pulley were insufficient to operate the conveyor when it was heavily loaded, by reason of which the belt was thrown from the pulley; that this condition had existed for several months prior to the accident, was well known to the defendant, and unknown to the plaintiff. The defendant denied negligence on its part and affirmatively pleaded the defenses of assumption of the

risk, fellow servant, and contributory negligence. The cause was tried before a jury and resulted in a verdict for plaintiff in the sum of $5,000. The defendant moved for a new trial, which was denied. Judgment was entered for the amount of the verdict, and the defendant has appealed.

It is assigned that the court erred in refusing to give certain instructions requested by appellant. They were to the effect that appellant was not an insurer of the safety and sufficiency of the appliances employed by it; that it was required to take such reasonable precautions only as would have been observed by a reasonably prudent man under the circumstances, and was not required to anticipate any accidental happenings which would not have been suggested by reasonable and ordinary experience. It is doubtful to our minds whether there was evidence in this case upon which to base the requested instructions on the theory that the accident in question was a merely accidental happening that would not have been suggested as a probable one by reasonable and ordinary experience. In any event, however, the court did instruct the jury that appellant was not an insurer of the safety of its employees, but that the law requires that it shall furnish a reasonably safe place to work, under all the circumstances of the employment, and that it shall exercise such care for the safety of its employees as an ordinarily careful and prudent person, having in view the dangers to human life and limb, would exercise under like circumstances. We think the above covered appellant's point.

It is argued that the court erred in refusing to give the following requested instruction:

"The court instructs the jury that there is no law in the state of Washington, applicable to this case, which requires of the defendant the use of any specific or definite appliances or devices for the guarding of the belt or the pulley involved in this case; that the law only requires that the defendant should exercise reasonable prudence and care in providing safeguards. That no safeguards are required by law against

dangers which would not suggest themselves to a reasonably prudent, careful and cautious man."

It is appellant's theory that the complaint does not bring this case within the operation of the act of 1903 requiring the maintenance of certain safeguards, and that it must be considered as a common-law action and not one under the statute. The jury were not advised by the instructions of the existence of any statute upon the subject, but the case was submitted upon instructions as to ordinary and reasonable care and prudence on the theory of the common law. We do not see that appellant has reason to complain in this particular, even under its own theory as to nonapplicability of the factory act.

It is next assigned that the court erred in giving the following instruction:

"Now, there is another feature of this case I will call attention to. An employee who is employed to do a certain kind of work may be called upon by his employer to do something out of the line of his ordinary duty. If that work that is outside of the line of his duty is dangerous in its nature, inherently dangerous, it is incumbent upon the employer to inform the employee of such danger and warn him of such danger before he sets him at such work; but if the danger is apparent, open and plain, such that an ordinarily sensible person would perceive by the exercise of his senses, then such warning is not necessary, because it is something he can see himself. If I am sent about a piece of work and told to go to a certain place and there is a hole in the floor six foot square, my employer is not bound to tell me that; I have eyes and must use them and not walk off into that hole."

The objection to this instruction is that it introduces an element not within the issues, viz., that of a servant being called away from his regular duties to some other place without sufficient warning as to probable danger. It appears that both parties submitted written requests for instructions, but the court instructed orally in his own language. The criticism upon the quoted instruction presents some difficulty,

but we believe, in view of the whole case, it should not be held to have constituted prejudicial error. The complaint and evidence both show that respondent's ordinary duties were those of fireman, and that he was usually busy feeding the ovens. It is true he had frequently adjusted this belt upon the lower pulley, but it was sometimes done by the engineer. His regular duty was elsewhere, and his calls to this place were necessarily sudden and in a measure unexpected. The complaint also alleges that, by reason of defective machinery, which was unknown to him, and without warning or notice to him, the belt fell and caused the injury.

Considering the short time he had been there, and all the evidence in connection with the above averments, we think it should be held that this instruction as to the law when one is called from his ordinary duty, and as to the duty to warn him, was sufficiently within the issues. Particularly do we think it was not prejudicial in view of the latter part of the instruction with reference to open, plain and obvious conditions. Furthermore, the evidence of respondent, and the only other witness who saw him at the time of the accident, was that respondent had turned from the place of the pulley when the machinery had started to run, and was going to his regular place, when he was struck. His presence at the place was due to his having been called to that locality, and he received no warning of the impending danger. When evidence is received without objection upon any particular ground not covered by the complaint, the court may assume that the complaint is as broad as the evidence when charging the jury, and the complaint will be deemed amended to conform with the evidence and charge, since the amendment could have been made as of course at the trial. *Gallamore v. Olympia*, 34 Wash. 379, 75 Pac. 978; *Iverson v. McDonnell*, 36 Wash. 73, 78 Pac. 202.

It is argued that the court erred in not stating to the jury that appellant had made issue with the complaint by denials in its answer. It is true the court did not specifically so

state; but the jury must have understood from the whole trial that appellant controverted the material facts alleged by respondent, and the court did instruct that the burden was upon respondent to prove all the allegations of his complaint by a fair preponderance of the evidence. Under these circumstances appellant was not prejudiced by the mere failure of the court to state that the material allegations of the complaint were denied.

It is further urged that the court erred in stating to the jury that there were but two affirmative defenses, viz., contributory negligence and assumption of the risk. The answer also interposed the defense that the accident was caused by the negligence of a fellow servant, but the court said nothing of this to the jury and gave no instruction upon the subject. Appellant does not appear to have requested an instruction on this subject, but if the subject came within the evidence it became the duty of the court to state the law thereon to the jury. The only basis for the claim that the act of a fellow servant caused the accident is that the foreman of the mill, who was upon the upper floor, testified that the block piler, against the foreman's orders given at the time, attempted to put the belt upon the upper pulley, and that because of his inexperience it fell. The engineer also testified that the block piler was attempting to put on the belt when he left to go below, by order of the foreman, to put on the belt below. The foreman expressed his theory that the accident was due to the fact that respondent must have been holding the belt against the pulley, but he did not see what occurred below, and respondent and the engineer, who had reached the lower floor, were the only eyewitnesses of what occurred. They both say that the respondent had adjusted the belt, that the machinery had commenced to run, and that respondent had turned to go to his work when the belt fell. This testimony from the only eyewitness of respondent's situation at the moment of the accident shows that respondent was going to his ordinary duties, and was

at the time doing nothing in common with the block piler. He could not see what was going on above. The conditions which brought about his injury were not under his control, and manifestly the situation should not have been such that the mere dropping of the belt would have wrought such havoc. The belt was liable to drop from the hands of anyone, experienced or otherwise. The real proximate cause of the accident was not, therefore, traceable to the act of the block piler, even if that act may have set other agencies in motion; but it must have been due to some defect in the appliances. Under the facts in evidence there was no question of fellow servant involved.

In *Mullin v. Northern Pac. R. Co.*, 38 Wash. 550, 80 Pac. 814, it was held that a fire knocker, at work in a cinder pit beneath an engine, was not a fellow servant with a co-employee who moved another engine over the pit; but that he was entitled to a reasonably safe place for his work. The same was true of respondent. While in the act of pursuing his regular duties, he was assailed by the flying belt and crashing timbers. The place was therefore not reasonably safe, even under appellant's theory as to the act of a fellow workman. The appliances should not have been such that the mere act of the block piler in dropping the belt would have produced such a result. In view of the evidence, it was therefore not error to fail to state that the answer included the defense that the accident was due to the act of a fellow servant.

Insufficiency of the evidence, failure of proof, and that the complaint does not state a cause of action are all urged. From the statement of the evidence and pleadings and from what has been hereinbefore said, we think it is sufficiently clear that the court did not err in overruling these contentions.

The judgment is affirmed.

MOUNT, C. J., DUNBAR, RUDKIN, and FULLERTON, JJ., concur.

ROOT and CROW, JJ., took no part.