8159

### SETTLEMEYER v. SOUTHERN RY.—CAROLINA DIVISION.

PLEADINGS—NEGLIGENCE—RAILROADS—HORSES.—There may be a recovery upon evidence tending to show that an injury was caused by the negligence alleged in the complaint operating as a proximate cause in conjunction with another independent proximate cause not alleged. *Here* it is held a traveler may recover for an injury caused by his horse becoming frightened from the smell emanating from a car of wild animals left standing for several days so as to partially obstruct the highway crossing, *alleged,* and from the noise made by a cage of rabbits on the depot platform, *not alleged.*

MR. JUSTICE HYDRICK *criticises and limits the doctrine announced in Mason* v. *Spartanburg, 40 S. C. 390, and Brown* v. *Laurens, 38 S. C. 282.*

MR. JUSTICE WATTS, MR. CHIEF JUSTICE GARY, *concurring, thinks the proximate cause of the injury was the fright of the horse at the rabbits.*

Before ALDRICH, J., Cherokee, November, 1910. Reversed.

Action by W. L. Settlemeyer against Southern Railway— Carolina Division. Plaintiff appeals.

*Messrs. Butler & Hall, Otts & Dobson,* for appellant, cite: *The Mason case on which the trial Court relied is limited by recent decisions:* 55 S. C. 422. *Railroad company is liable for causing fright to horses:* 33 Cyc. 1153. *Courts will take judicial notice that horses will be frightened by uncommon odors:* 16 Cyc. 852, 874. *It is negli-*

*gence to. obstruct a highway:* 66 S. C. 246; 53 S. C. 121; 58 S. C. 223; 47 S. C. 381; 63 S. C. 371; 84 S. C. 536.

ı *Messrs. Sanders & DePass,* contra, cite: *The negligent act complained of must have caused the injury:* 102 Am. St. R.; 58 L. R. A. 399; 81 Am. St. R. 204; 45 N. W. 1014; 408 S. C. 390; 38 S. C. 282; 1 Strob. 525. *Plaintiff cannot recover for fright caused by the rabbits, because not alleged:* 55 S. C. 483; 76 S. C. 560; 84 S. C. 60; 88 S. C. 570.

March 26, 1912.   The opinion of the Court was delivered by

MR. JUSTICE WOODS.   The allegations of negligence and injury resulting therefrom on which the plaintiff sought to recover from the defendant are as follows: "That on or about the ninth day of July, one thousand nine hundred and nine, while driving along the public highway leading from Cherokee Falls to his home at Gaffney, in said State and county, and while attempting to cross the tracks of the defendant at a regular crossing, at the depot for Cherokee Falls, a freight car being used by the defendant was across the public road or highway, and had negligently and carelessly been left across said public road, for a long time. in violation of the statute laws of this State, and a wilful disregard of the rights of the plaintiff and the public; and in order to continue his journey, the plaintiff was forced, by reason of the wilful and negligent blocking of said public road, or crossing, to drive around and above the regular crossing, to cross defendant's tracks.

"That the freight car which was wilfully and negligently left standing across said public crossing by the defendant, its lessee, agent, servant and representatives, was very offensive, in that it smelled very foully, and gave forth a great stench, that plaintiff's horse was made afraid and became very much frightened by reason of the foul smell and great

stench arising from said car, became unmanageable, and in surging and violent effort to get away from the foul smelling car, which had been left standing across the public crossing, as aforesaid, ran violently against the bank of the cut of the railroad, which came down even with the public road; on the opposite side of the railroad, and just above the public crossing; and by reason of which the plaintiff was thrown violently from his buggy and was greatly hurt and painfully injured. * * *"

The Circuit Judge directed a verdict on the ground that there was no testimony tending to prove that any act of negligence of the defendant alleged in the complaint was the proximate cause of the injury. On the vital point the plaintiff testified in substance that a car in which wild animals were kept by a showman had been left on the track so as to project across the wagon track of the road, leaving, however, room between the car and the station building for vehicles to pass; that as he approached the car riding in a buggy his horse was frightened and excited by the noisome odors emitted from the car, the fright of the horse causing plaintiff to form the intention of turning back; that at this juncture he saw a box or case of rabbits on the station platform and that the noise made by the jumping of the rabbits in the wire cage so increased the fright of the horse that he became unmanageable and ran around the car against the embankment, throwing plaintiff out of the buggy. It thus appears that there was evidence of two causes which frightened the horse and made him run away—the foul odor from the car, and the noise made by the rabbits. The complaint contains no allegation of negligence against the defendant with respect to the noise made by the rabbits, and if the evidence had shown that the horse was frightened by that alone the case would have failed; for a plaintiff cannot recover on proof that he was injured by an act of negligence by the defendant not charged in the complaint. But while it is necessary to recovery to show that an act of negligence

alleged in the complaint was one of the proximate causes, it is not essential to show that it was the sole proximate cause. There may be a recovery upon evidence tending to show that an injury was received by reason of the negligence alleged in the complaint operating as a proximate cause in conjunction with another independent cause. This rule is familiar and generally recognized. *Thompson* v. *Seabord A. L. Ry.,* 78 S. C. 384, 58 S. E. 1094; 81 S. C. 333, 62 S. E. 396, 20 L. R. A. (N. S.) 426n; *Blakely* v. *Laurens County,* 55 S. C. 422, 33 S. C. 583, 29 Cyc. 497.

As the evidence tended to show that the foul odors of wild animals coming from the car, alleged in the complaint as the proximate cause, was one of the proximate causes of the fright, the runaway, and the resulting injury to the plaintiff, it follows under the principle above stated that this was sufficient to require the submission of the issue of proximate cause to the jury, if leaving the car on the crossing was an act of negligence. On this last point, it is important to observe that the car was not stopped on the crossing temporarily as a part of a passing train, but was left standing for several days across the road where the defendant must have known that persons were continually passing in vehicles drawn by horses and mules. Aside from the common knowledge on the subject, the fact that the plaintiff's horse and other horses were excited and frightened by the odor of wild animals made the issue one for the jury to determine whether the defendant should have known that the presence of the car was dangerous to public travel, and whether due care required that it should have placed such a car further away from the crossing.

The judgment of the Circuit Court is reversed.

MR. JUSTICE FRASER *concurs.*

MR. JUSTICE HYDRICK, *concurring.* I concur in the opinion that the judgment should be reversed, for the reasons

stated in the opinion of Mr. Justice Woods, and also for the following additional reasons: The question of proximate cause is, ordinarily, one for the jury. *Doolittle* v. *Ry.*, 62 S. C. 130, 40 S. E. 133; *Schumpert* v. *Ry.*, 65 S. C. 332, 43 S. E. 813; *Rinake* v. *Mfg. Co.*, 55 S. C. 179, 132 S. E. 983; *Carson* v. *Ry.*, 68 S. C. 56, 46 S. E. 525. Numerous other cases might be cited from the decisions of this Court. The same rule prevails in other jurisdictions. 21 A. & E. Enc. L. (2 ed.) 508; 29 Cyc. 639. In 29 Cyc. 503, it is said: "It is usually held that, although an injury is caused by frightened animals, yet the negligent act of the person who caused them to be frightened is the proximate cause of the injury, the result being a natural consequence of the original act."

Of course, if the evidence is susceptible of only one reasonable inference, the Court may draw the inference. But, in this case, the testimony is certainly susceptible of more than one inference. Several of the witnesses testified that the car gave forth a foul odor, as of wild animals, and that it partially obstructed the public road. Plaintiff testified that his horse was frightened by the odor from the car. It is true there was some confusion in his testimony as to the connection which the cage of rabbits had with the fright of his horse, but I think it was made reasonably clear right at the last of his testimony set out in the opinion of Mr. Justice Watts, that it was the odor of the car and not the rabbits which frightened his horse. He says that the horse became frightened just as he was passing or had passed the rabbits, and came in front of the car; and that when he had passed them, his horse snorted, and then the rabbits began to jump and surge. Two other witnesses testified that their horses became frightened at the car, when the rabbits were not there, so far as it appears from the testimony. It is matter of common knowledge that horses do take fright at the smell of wild animals. From this testimony it is, I think, as probable that the fright of the horse was caused by the odor from the car, and that his snort caused the rabbits to become

alarmed as that the alarm and noise of the rabbits frightened · the horse; or, it may be, as suggested by Mr. Justice Woods, that the scent of wild animals emitted from the car combined with the noise of the rabbits to frighten the horse.

Moreover; the frightening of his horse by the odors from the car is not the only negligence alleged by the plaintiff as the cause of his injury.    He alleges, also, that the road was · negligently obstructed by leaving the car extending into it, so that in going around the end of the car, the horse ran his buggy into a bank which caused him to be thrown out and hurt.    There was testimony tending to support this allegation.    So, no matter what caused the fright of the horse, if plaintiff's injury was proximately caused by the negligent obstruction of the road with the car, defendant would be liable.    *Carson* v. *Ry.*, *supra*.

The Circuit Judge based his ruling upon the authority of *Mason* v. *Spartanburg*, 40 S. C. 390, 19 S. E. 15, which I do not think at all applicable to the facts of this case.    Moreover, in *Blakely* v. *Laurens*, 55 S. C. 422, 33 S. E. 503, this Court expressed dissatisfaction with that case and also with *Brown* v. *Laurens*, 38 S. C. 282, 17 S. E. 21, and practically limited their authority to a precisely similar state of facts, saying, "We are not disposed to extend those cases a single iota."

Mr. Justice Watts, *dissenting*.    This is an action brought in 1910 to recover three thousand ($3,000) dollars for injuries alleged to have been received by plaintiff in 1909, while driving along the public highway leading from Cherokee Falls to his home in Gaffney, S. C.    Plaintiff is a physician and had occasion to go to Cherokee Falls on a professional visit to a patient.    It is alleged in the complaint that the defendant had left a freight car across the public highway or road, in violation of the statute law of this State, and in wilful disregard of the right of plaintiff and the public, and that by reason of blocking the said public highway:

the plaintiff was obliged, in crossing the railroad track to drive around and above the regular crossing.    It is further alleged that this car gave out offensive odors, by reason of which plaintiff's horse was frightened and became unmanageable, and that after driving past the end of the car, the plaintiff was unable to bring his horse back into the public road or highway, and in his efforts to get away from the foul stench from the car ran violently against the bank of the cut, throwing plaintiff from his buggy and injuring him seriously.    Defendant answered denying allegations of plaintiff's complaint, and setting up the defense of contributory negligence.    At close of testimony in the case, upon motion of defendant, his Honor, Judge Aldrich, directed a verdict for defendant, under authority of *Mason* v. *Spartanburg County,* 40 S. C. 390.    The grounds of motion were:

1st. Because the evidence fails to prove that the accident occurred on a public road, or any public road was obstructed by defendant.

2d. Because, even if this was a public road, and even if it was obstructed, the evidence fails to show that any notice was given to the defendant of any obstruction.

3d. Because, in any event, the evidence fails to show that the fright of the horse was caused by the car being on or near the road, or from any odor arising therefrom.

4th. Because the evidence shows that the proximate cause of the injury to plaintiff was the fright of the horse caused by a cage of rabbits on the platform of defendant's depot, and not by the car which it alleged was on the road.

There is no doubt but there was sufficient testimony in the case to carry it to the jury to determine whether it was a public road, and whether defendant obstructed it or not, and there is no question but that plaintiff received injuries.    But even if the evidence established clearly that the road was a public highway, and was obstructed in violation of law, the plaintiff must go further and introduce evidence tending to establish the negligence which he alleges existed, and that

that negligence was the proximate cause of his injury. In other words, even if the defendant was careless and negligent, as alleged in the complaint, if that carelessness and negligence on its part was not the direct and proximate cause of plaintiff's injuries he cannot recover.

If the facts in the case show that the injuries to the plaintiff were not the natural and probable consequences of the alleged acts of negligence of defendant set out in the complaint, then his Honor committed no error in directing the verdict for defendant. What acts of negligence does the plaintiff allege in his complaint as to the cause of his injury? Complaint alleges that the defendant had carelessly and negligently left a car across the public road or highway. That it "smelled very foully" and gave forth a great stench, that "plaintiff's horse was made afraid and became very much frightened by reason of the foul smell and great stench arising from the car, became unmanageable, and the plaintiff, after driving past the end of the car, was unable to bring his horse back into the public highway, but the horse in his fright became unmanageable, and in surging and making a violent effort to get away from the foul smell of the car which had been left standing across the public highway, as aforesaid, ran violently against a bank of the cut of the railroad, which came down even with the public road on the opposite side of the other roadbed just before the public crossing; that by reason of which plaintiff was thrown violently from his buggy and was greatly hurt and painfully injured." The complaint, in substance, charges that by the negligence of defendant in obstructing the highway with its car, and the foul smell emanating therefrom that his horse became unmanageable, frightened and ran away, injuring him after he had driven past the car. Now, what does plaintiff testify as to what frightened his horse?

"You receive any information that made it necessary for you to return to Gaffney? Yes, sir; just after four o'clock I left the company store on my way to Gaffney,

coming up towards the depot. In about 150 yards of the depot I let the top of my buggy down, put my lines down; it may have been 200, 150 or 200 yards below; I went on, the horse was in a walk. I went uninterruptedly until I turned the corner of the depot platform. On the lower corner, I suppose you would say towards the river or next to the road. Just as he was turning that corner, he raised his head and blowed, snorted or whatever you may call it; at the time, I noticed he was mighty excited. What did he do? He stepped backwards two or three steps, I hollered 'whoa' and stopped him with the lines, intended to jump out and catch him, catch the lines. My first intention was to turn back toward Cherokee Falls. I noticed the road was blocked with a car, and on the corner of the platform, just below the corner, I suppose half way between the corner and the door of the depot, was a box of jack rabbits. Go ahead. A box of jack rabbits. These jack rabbits were making a fuss, flustrating. I mean shaking the box, a wire top box. Just about that time the horse sprang forward with me, with all his might. There was an opening between the car and a coal pile up at the sidetrack. The horse was moving towards that. I thought he was going down the cut. I seen there was no other way to escape, but when he went past the car he turned to the right towards the road, and in doing so he went right over the high bank, and just as I saw the buggy was going to strike the high bank, I grabbed a wire with my left hand, a kind of silver wire around the seat, and when it struck, it threw me up full length, but I struck back in, struck in the cushions. My right hand struck outside. After going over the bank, just on the other side there is a ditch, a side ditch of the road. What was the first indication that you had from your horse that he was frightened? What was the first thing that he did that convinced you that he was frightened? He raised his head and snorted loudly, and then he stepped backwards, possibly two steps, and just at this instant he

rushed forwards.    Just as he rushed forwards what were
you doing?    I was sawing him with the lines all that ·I
could.    I was pulling, trying to stop him.    Was it then
your intention or not to go on by the cars?    I was trying
to go back by Cherokee Falls.    I saw that he was too much
excited, and.I saw that it would be hard to get him to go
by.    What prevented you from turning back to Cherokee
Falls?    I suppose it was these rabbits giving this second
flustration.    Before you could turn him towards Cherokee
Falls your horse rushed forward with all his might?    Yes,
sir.    Now, what was all along here at the time this acci-
dent occurred?    Back here was shingles.    All along here?
Yes, sir; stacked up I think about ten or twelve feet high.
The shingles were on the side of the road, and when the
horse backed I thought he was going to run into this pile
of shingles.    Do you remember where these rabbits were
sitting?    This is the depot here.    The door there.    These
rabbits were just about the corner of that depot proper.
Not the corner of the platform?    No, about the corner
of the depot proper.    I believe you say that just at the time
your horse ran back that the rabbits were making a noise?
Yes, sir; I heard the noise myself that they were making,
a great deal of noise, and they were not only doing that,
but they were flustrating the cage.    Were they making that
noise before that time?    No, sir.    Did you see the rabbits
about that time?    Yes, sir; I noticed it just as I was pass-
ing.    At the point where I place figure '1' is it intended to
represent the cage of rabbits?    Yes, sir.    Your horse with
reference to that cage of rabbits, your horse when it began
to get frightened, where was it?    He had turned about
the length of the horse around .the corner.    I will put a
cross mark near that point.    Yes, sir.    What is the distance
from the cage of rabbits to the corner of. the . platform?
How close were the rabbits to the corner of the platform?    I
think they must have been about eight or ten feet, about
eight:    The first sign that you saw of the fright of the horse,

the horse became frightened just as you were passing or had passed the cage of rabbits? Yes, sir. When it came in front of that car.' They were jumping, surging and shaking the cage. When I passed them they were all of them very quiet. So just when you passed them they began to make that noise and jump? Yes, sir; after the horse blew or snorted. Then they began to jump and surge? Yes, sir."

A careful examination of all the evidence will not show that any inference can be drawn that the cause of the horse's fright was any of the allegations of negligence specified in the complaint, but on the contrary, the conclusion must be reached that the cage of jack rabbits on the platform of defendant's depot was the cause of the horse's fright, and while the highway might in part have been obstructed by the car, plaintiff had room to cross said highway and did get over it without collision with the car. The defendant had the right to put the rabbits on its platform at depot. That is what platforms and depots are erected for, and it had the right to unload its cars there and to haul shows, wild animals, and any other freight in the way of its business. The rule on the subject of proximate consequences, is thus stated in *Harrison* v. *Berkley,* 1 Strob. 525, and quoted with approval in *Pickens* v. *Ry.,* 54 S. C. 498, 32 S. E. 567: "Only the proximate consequences shall be answered for (2 Greenleaf Ev. 210, and cases there cited). The difficulty is to determine what shall come within that designation. The next consequence only is not meant, whether we intend thereby the direct and immediate result of the injurious act, or the first consequence of that result. What either of these would be pronounced to be, would often depend upon the power of the microscope with which we should regard the affair. Various cases show that in search of the proximate consequences, the claim has been followed for a considerable distance, but not without limit, or to a remote point (8 Taun. 535, Peak's Cases 205).

Such nearness in the order of events, and closeness in the relation of cause and effect, must subsist, that the influence of the injurious act may predominate over that of other causes, and shall concur to produce the consequence, or may be traced in those causes.   To a sound judgment must be left each particular case.   The connection is usually enfeebled, and the injurious act controlled, where the wrongful act of a third person intervenes, and where any new agent, introduced by accident or design, becomes more powerful in producing the consequences than the first injurious act (8 East. 1, Lesp. 48).   It is, therefore, required that the consequences to be answered for should be natural as well as proximate (7 Bing. 211, B. & Ad. 645)."   Here if defendant was negligent as complained of, these acts of negligence did not produce the fright of his horse, but an independent cause intervened and produced that fright, to wit: A cage of playing jack rabbits.   In *Brown* v. *Laurens County,* 38 S. C. 282, 17 S. E. 21, a *nonsuit* was granted and sustained by the Supreme Court.   The facts of that case were, plaintiff was driving her horse and buggy on a bridge across a public stream, the horse shied at a piece of timber which had been put there for the purpose of repairing the bridge, and the buggy was backed over the side of the bridge at a point where there was no side railings, and plaintiff was thrown into the stream and injured. At close of plaintiff's testimony, defendant moved for a *nonsuit* on the grounds that the cause of the injury was, "a frightened horse, not a defective bridge."   This case was followed by the case of *Mason* v. *Spartanburg,* 40 S. C. 390, 19 S. E. 15, the case relied on by Judge Aldrich on Circuit.

The plaintiff's injury in this case was caused by a frightened horse.   The horse was not frightened by any of the acts of negligence set out in plaintiff's complaint as a direct and proximate cause of his injury, and to allow a recovery in such a case would, in my opinion, inflict untold annoyance,

litigation and injury, and would be a most pernicious and dangerous doctrine to establish.

I think the Circuit Judge was right, and the judgment of the Circuit Court should be affirmed.

MR. CHIEF JUSTICE GARY *concurs.*