12453

TAYLOR v. WINNSBORO MILLS

(143 S. E., 474)

1. TRIAL—TRIAL JUDGE CANNOT PROPERLY DIRECT VERDICT IF THERE BE ANY EVIDENCE TENDING TO SUPPORT DEFENSE INTERPOSED.— Trial Judge cannot properly direct a verdict if there be any evidence tending to support the defense interposed by defendant.

2. TRIAL—ON MOTION FOR DIRECTED VERDICT, ADVERSARY IS ENTITLED TO HAVE EVIDENCE CONSTRUED MOST STRONGLY IN HIS FAVOR.—On

motion for directed verdict, adversary is entitled to have evidence construed most strongly in his favor.

3. TRIAL—FACT QUESTIONS AND INFERENCES THEREFROM ARE FOR JURY. —The general rule is that questions of fact are to be submitted to the jury, and this includes not only cases when facts are in dispute, but also when the question is as to inference to be drawn from such facts after they have been determined.

4. MASTER AND SERVANT—PROOF OF INJURY DOES NOT RAISE PRESUMPTION OF MASTER'S NEGLECT.—Proof of injury to servant does not raise presumption of neglect on part of the master.

5. MASTER AND SERVANT—MASTER MUST EXERCISE CARE TO FURNISH SERVANT REASONABLY SAFE PLACE TO WORK.—The master must exercise care to furnish his servant a reasonably safe place to work.

6. NEGLIGENCE—PROXIMATE CAUSE IS USUALLY FOR JURY, ESPECIALLY IF MORE THAN ONE INFERENCE CAN BE DRAWN FROM FACTS.—The question of proximate cause is usually to be solved by the jury, and certainly so if more than one inference can be drawn from the facts and circumstances of the case.

7. MASTER AND SERVANT—PROXIMATE CAUSE OF DEATH OF EMPLOYEE CAUGHT IN MACHINERY BELT WHICH HE ATTEMPTED TO REPLACE ON DRIVE SHAFT HELD FOR JURY.—In action by administrator of employee receiving mortal injuries from being caught in machinery belt when employee attempted to replace belt on drive shaft, issue of proximate cause *held* for jury.

8. NEGLIGENCE—NEGLIGENCE RELIED ON FOR RECOVERY MUST BE ALLEGED IN COMPLAINT.—The items of negligence relied on for recovery must be alleged in the complaint, and, if objection be made, no other act of negligence can be shown by the testimony.

9. PLEADING—IF TESTIMONY TENDS TO ESTABLISH ACTS OF NEGLIGENCE NOT PLEADED AND NO OBJECTION BE MADE, JURY MAY CONSIDER SUCH ACTS.—In action for damages for negligence, if the testimony tends to establish acts of negligence not pleaded and no objection be made thereto, jury may consider such acts.

10. PLEADING—IF OBJECTION BE MADE TO EVIDENCE OF ACTS OF NEGLIGENCE NOT ALLEGED, PLAINTIFF SHOULD MOVE TO AMEND COMPLAINT BY INSERTING THEM, WITHOUT ACTUALLY SERVING NEW COMPLAINT. —If objection be made to testimony of acts of negligence that are not alleged in plaintiff's pleading, plaintiff should move to amend complaint by inserting them without actually serving new complaint.

11. PLEADING—PLAINTIFF'S MOTION TO AMEND COMPLAINT TO INCLUDE ITEMS OF NEGLIGENCE NOT PLEADED IS ADDRESSED TO TRIAL JUDGE'S SOUND DISCRETION.—Plaintiff's motion to be allowed to amend his complaint to include items of negligence not pleaded by him is addressed to the trial Judge's sound discretion.

12. PLEADING—IN SUIT FOR EMPLOYEE'S DEATH, ITEM OF NEGLIGENCE NOT ALLEGED, BUT PLACED BEFORE JURY WITHOUT OBJECTION, COULD BE CONSIDERED BY JURY.—In action by administrator of deceased employee who suffered mortal wounds by being caught in machinery belt which he attempted to replace on drive shaft, though item of negligence, to the effect that it was customary for servants to disregard oral rule relative to replacing machinery belts, was not alleged in complaint, it was for consideration of the jury, where it was placed before them in the evidence, without objection.

13. MASTER AND SERVANT—IF MASTER'S RULE IS DISREGARDED BY SERVANTS TO MASTER'S KNOWLEDGE AND IT BECOMES CUSTOM, THEN WHETHER RULE WAS WAIVED IS QUESTION FOR JURY.—If a rule of the master is disregarded by its servants and this is known to the master and it becomes a custom, then whether the rule was waived or not is a question for the jury.

14. MASTER AND SERVANT—WHERE THERE IS CONFLICT OF TESTIMONY AS TO ASSUMPTION OF RISK, IT IS FOR JURY.—Where there is a conflict of testimony as to assumption of risk by an employee, it is a question to be decided by the jury

15. TRIAL—WHERE MORE THAN ONE INFERENCE FROM TESTIMONY MAY BE DRAWN, QUESTION IS FOR JURY.—Where more than one inference from testimony may be drawn, the question must be left to the jury.

16. MASTER AND SERVANT—WHETHER EMPLOYEE KILLED WHEN CAUGHT IN MACHINERY BELT ON ATTEMPTING TO REPLACE IT ON PULLEY WAS CONTRIBUTORILY NEGLIGENT OR ASSUMED THE RISK HELD FOR JURY.—Employer's liability for employee's death from being caught in machinery belt on attempting to replace it on pulley *held* for jury, as against contention that employee assumed the risk and was guilty of contributory negligence.

Before TOWNSEND, J., Fairfield, October, 1926. Affirmed.

Action by Thomas Taylor, as administrator of the estate of Peter Taylor, deceased, against the Winnsboro Mills. From the judgment, defendant appeals.

*Messrs. McDonald & McDonald,* for appellant, cite: *No negligence on part of defendant which was the proximate cause of the injury:* 50 A. L. R., 367; 97 S. C., 465; 104 A. S. R., 452. *Deceased not acting within scope of duty when injured:* 61 S. C., 491; 109 S. C., 67; 39 C. J., 803; 1 Labatt, Sec. 381; 5 A. S. R., 201; 105 Ind., 151; 77 S. C., 328. *Assumption of risk:* 84 S. C., 283; 39 C. J., 721; 58 L. Ed., 1062; L. R. A., 1915-C, 1; 86 S. E., 849; 1 Bailey, Per. Inj. (2nd Ed.), 646; 22 S. C., 557; 70 S. C., 471; 78 S. C., 472; 22 S. C., 557; 41 S. C., 388; 72 S. C., 232; 21 S. C., 541; 72 S. C., 346; 74 S. C., 419; 75 S. C., 487; 80 S. C., 232; 86 S. C., 116; 55 S. C., 483; 86 S. C., 69; 104 S. C., 451; 110 S. C., 153; 233 U. S., 492; 111 N. W., 1114; 52 N. W., 1065; 90 N. W., 286; 47 S. W., 694; 51 So., 377; 241 U. S., 237; 60 L. Ed., 970; 53 L. Ed., 281; 29 L. R. A. (N. S.), 111; 3 A. L. R., 1029. *Distinguished:* 139 S. C., 193; 135 S. C., 163; 111 S. C., 437; Id., 434; 112 S. C., 541; 102 S. C., 407; 120 S. C., 333.

*Messrs. Gaston, Hamilton & Gaston,* for respondent, cite: *Proximate cause question for jury:* 130 S. C., 472; 84 S. C., 164; 77 S. C., 403; 76 S. C., 257; 76 S. C., 205; 72 S. C., 531; 93 S. C., 287; 84 S. C., 207; 78 S. C., 383; 68 S. C., 64; 54 S. C., 498; 65 S. C., 430; 66 S. C., 316; 70 S. C., 490; 65 S. C., 436; 64 S. C., 498; 52 S. C., 323; 83 S. C., 71. *"Proximate cause":* 131 S. C., 124; 115 S. C., 181; 101 S. C., 59; 34 S. C., 211; 38 S. C., 199; 75 S. C., 68; 1 Strob., 525; 54 S. C., 503; 94 U. S., 469; 52 S. C., 336; 21 Am. & Eng. Enc. L. (2nd Ed.), 485, 487, 490, 491; 59 L. R. A., 109; 60 L. R. A., 269; 52 L. R. A., 448; 18 L. R. A., 154; 56 Mich., 430; 21 L. R. A., 721. *Assumption of risk for jury:* 128 S. C., 136; 133 S. C., 256; 133 S. E., 550; 112 S. C., 541; 111 S. C., 437. *"Assumption of risk":* 101 S. C., 73; 107 S. C., 387; 110 S. C., 371; 113 S. C., 399; 111 S. C., 434; 120 S. C., 333; 139 S. C., 17; 123 S. C., 199. *Cases distinguished:* 61

S. C., 491; 86 S. C., 116; 72 S. C., 237; Id., 348; 80 S. C., 232; 84 S. C., 283; 78 S. C., 472; 22 S. C., 57; 70 S. C., 470; Id., 419; 75 S. C., 487; 55 S. C., 483; 86 S. C., 69; 104 S. C., 451; 109 S. C., 67; 110 S. C., 153; 97 S. C., 465; 77 S. C., 328.

May 23, 1928.

The opinion of the Court was delivered by MR. ACTING ASSOCIATE JUSTICE J. WM. THURMOND.

In April of 1926 this case was commenced for the recovery of $10,000.00 damages for alleged personal injuries inflicted by the defendant on the plaintiff's intestate, Peter Taylor, October 2, 1925, and his death therefrom October 9th following.

It is admitted that the deceased was employed as a card stripper by the defendant, and, at the time he received mortal injuries, was acting in the scope of his duties.

The complaint contains five items of negligence, to wit: In not having the belt as tight as it should be and in allowing it to be too loose; in failing to properly inspect belt and running it with a defective buckle; in failing to warn the plaintiff's intestate of the unsafe place, and unsafe tools and appliances for his work; in failing to furnish efficient fellow workmen to keep said belt tight and in proper place; and to require the plaintiff's intestate to do the work without warning, or instructions of its danger; that defendant knew, or should have known, that the belt was too loose, or slack, to stay in place, and that it had been giving trouble, and the defendant failed to repair the said belt, and caused the plaintiff's intestate to work in a dangerous place.

The complaint further alleges that the death of Peter Taylor was caused by the negligence of the defendant in the manner aforesaid. The amended answer sets up a general denial, sole negligence of the plaintiff's intestate, con-

tributory negligence, and gross contributory negligence, and assumption of risk.

The case was tried before Judge Townsend and a jury at Winnsboro, S. C., October 11, 1926. Motion for directed verdict was overruled and the jury found for the plaintiff in the sum of $2,000.00, and a motion for a new trial was made and refused, and, from judgment entered on said verdict, the defendant within due time perfected his appeal to this Court.

The carding machines in the defendant's mill are placed on the floor of the mill driven by a belt extending from an overhead shaft which supplies the power. The belt revolves on a pulley fixed to the overhead shaft and on one of two pulleys fastened on the projecting shaft which passes through the center of the carding machine. One of the pulleys on the shaft that turns the carding machine is tight, and the other loose, and the belt on the tight pulley operates the machine, but when on the loose pulley the machine is not supplied with power. The belt is shifted from one pulley on the projecting shaft to the other to stop or start the machine as desired, and this shifting is ordinarily done with an appliance in the shape of a fork with two prongs, and the belt passes through the prongs which hold it at its place on the carding machine.

The testimony tends to show that the belt should run tight, but on this occasion it was very loose and that it jumped the pulley several times that day, and Peter Taylor replaced it on the pulley, and finally he was carried up by the belt four or five feet and dropped to the floor, and thereby received mortal injuries; that this mill promulgated an oral rule forbidding card strippers to replace a displaced belt, but card strippers in the mill disregarded this rule and frequently flapped on the belt with their hands when it was displaced, and this was a custom in the mill; that the belt shifter was broken, and on said occasion did not serve the purpose for which it was made and used; that the card

stripper was not instructed how to flap on the belt; that the belt slipped off the overhead pulley and as it hung from the drive shaft the plaintiff's intestate attempted to replace the belt on the overhead pulley by flapping it; that the belt could not be held in place because the machine was defective, and the shifter was broken off; that the card grinder had a number of belts to inspect, and although there was not a belt shifter on this machine it was not inspected that day, nor was it shown that it had been inspected within a reasonable time theretofore, in the circumstances; that there was an exigency on this occasion and plaintiff's intestate acted in the interest of the defendant; that the defendant had warned the plaintiff's intestate not to replace belt.

The defendant served three exceptions, viz.: (1) That his Honor erred in refusing to direct a verdict for the defendant upon the grounds that there was a total failure of proof that any of the acts of negligence contained in the complaint was the proximate cause of the injury and death of the plaintiff's intestate, etc.; (2) that his Honor erred in not directing a verdict for the defendant upon the ground, that under no construction of the testimony could. it be considered any part of the duty of plaintiff's intestate to replace the belt, which had slipped off, and which he attempted to replace, etc.; (3) that his Honor erred in refusing to direct a verdict for the defendant, as the testimony showed that it was not the duty of the plaintiff's intestate to replace the belt which had slipped from the machine in question, and that it was conclusively shown by the testimony that the plaintiff's intestate voluntarily undertook to do so, and thereby assumed the risk of injury which was one of the ordinary risks of his employment, etc.

There is no exception to any testimony offered, nor is there any exception to the Judge's charge; and the three exceptions made are limited to the contention of the de-

fendant that a verdict should have been directed in its behalf, and all three may be considered together. The only question raised by the exceptions is whether a verdict should have been directed for the defendant.

In *Brooks v. Floyd,* 121 S. C., 356; 113 S. E., 490, this Court held:

"Under the well-settled rule, if there was any evidence tending to support the defense interposed by defendant, the trial Judge could not properly have directed a verdict. Under the equally well-settled rule, on such motion defendant was entitled to have the evidence considered and construed most strongly in his favor."

In *Richardson v. N. W. R. Co.,* 124 S. C., 326; 117 S. E., 514, this Court quotes from *Wood v. Mfg. Co.,* 66 S. C., 482; 45 S. E., 81, as follows:

"The general rule is well known that questions of fact are to be submitted to the jury, and this includes not only cases when the facts are in dispute, but also when the question is as to inference to be drawn from such facts after they have been determined."

In *Wilson v. A. C. L. Co.,* 134 S. C., 31; 131 S. E., 777, it is held:

"On motion to direct verdict, construction of evidence most favorable to opponent of motion must be adopted."

See, also, *Anderson v. Hampton & Branchville R. & Lumber Co.,* 134 S. C., 185, 132 S. E., 47; *Brogdon v. Northwestern R. Co.,* 141 S. C., 239; 139 S. E., 459.

Under the testimony could the trial Judge hold that only one inference could be drawn from the facts and circumstances in the case? Whether the belt was too loose so as to make it unsafe, and whether the belt shifter was broken, and, if so, was the place to work assigned by the master to the servant a reasonably safe place; and, if the appliances were deficient for those reasons, did the deficiency, or defects, constitute the proximate cause of the injury and death of the plaintiff's intestate?

It is well settled in this State that proof of injury does not raise presumption of negligence on part of master (*Wilson v. Railway Co.*, 134 S. C., 31; 131 S. E., 777); and the same case holds that the master must exercise reasonable care to furnish a safe place to work, but is not a guarantor.

It is too well settled in this State to require the quotation of authorities to show that a master must exercise care to furnish his servant a reasonably safe place to work; however, the following cases sustain this principle: *McKain v. Camden Co.*, 89 S. C., 378; 71 S. E., 949. *Thomason v. Manufacturing Co.*, 95 S. C., 239; 78 S. E., 895. *Mann, Administrator, v. Railway*, 138 S. C., 251; 136 S. E., 234.

The question of proximate cause is usually to be solved by the jury, certainly if more than one inference can be drawn from the facts and circumstances.

In *Settlemeyer v. Southern Railway*, 91 S. C., 147; 74 S. E., 137, it is held:

"There may be a recovery upon evidence tending to show that an injury was caused by the negligence alleged in the complaint operating as a proximate cause in conjunction with another independent proximate cause not alleged."

See, also, *Thompson v. Seaboard Air Line Railway*, 78 S. C., 384; 58 S. E., 1094. *Blakely v. Laurens County*, 55 S. C., 422; 33 S. E., 503.

In this case we think the issue of proximate cause was properly left for the jury to decide. Of necessity the practice requires that the items of negligence relied on for recovery must be alleged in the complaint, and, if objection be made, no other act of negligence can be shown by the testimony; but, if the testimony does tend to establish other acts of negligence, and no objection be made thereto, the jury may consider the other acts of negligence, though, if objection is made thereto, the plaintiff

should move to amend his complaint by inserting them without actually serving a new complaint, and this motion is addressed to the sound discretion of the trial Judge, and, if he allows the amendment, then the testimony may be admitted; if he disallows the amendment, the testimony will be excluded.

In *Gowns v. Watts Mill,* 135 S. C., 172; 133 S. E., 553, it was held:

"As a further reason why this assignment of error cannot be sustained, as to the charge of the Judge that the buckle was alleged to be defective, there was testimony introduced, without objection on the part of the defendant, tending to show that the buckle in question was defective and unsound. This, despite the lack of an appropriate allegation in the complaint, made an issue of fact to be submitted to the jury for their determination. See *Davis v. Railway,* 63 S. C., 370; 41 S. E., 468. *Chafee v. Aiken,* 57 S. C., 507; 35 S. E., 800. *Schwaninger v. McNeeley,* 44 Wash., 447; 87 P., 514; 38 Cyc., 1616, *et seq.*"

In this case there was testimony tending to show that the defendant had promulgated an oral rule, but that it was customary for the servants to disregard the rule. This item of negligence was not alleged in the complaint, but it is in the record without objection, and was before the jury, and the jury had the right to consider it. See cases *supra.*

It was held by this Court in *McAlister, Administratrix, v. Southern Railway Co.,* 130 S. C., 459; 126 S. E., 627, and affirmed by the Supreme Court of the United States (certiorari denied 266 U. S., 632; 45 S. Ct., 225; 69 L. Ed., 478), that:

"The custom of a railroad in operating its road may be shown as a basis on which employee had a right to act and rely."

See *Mann v. Railway,* 138 S. C., 251; 136 S. E., 234. *Vlasservitch v. Railway Co.,* 85 S. C., 291; 67 S. E., 306.

If a rule of the master is disregarded by its servants, and this is known to the master, and it becomes a custom, then whether the rule was waived or not is a question for the jury. *Wood v. Manufacturing Co.,* 66 S. C., 486; 45 S. E., 81. *Matthews v. Industrial Lumber Co.,* 91 S. C., 568; 75 S. E., 170; 45 L. R. A. (N. S.), 644; Ann. Cas., 1914-A, 45. *Carson v. Southern Railway,* 68 S. C., 84; 46 S. E., 525.

The principle of assumption of risk is invoked by the defendant in this case. In *Lorick v. Railway,* 102 S. C., 282; 86 S. E., 677; Ann. Cas., 1917-D, 920, this Court held:

"It has also been held where there is a conflict of testimony as to the assumption of risk, it is a question to be decided by the jury."

See cases cited.

Contributory negligence was also set up by the defendant, but it has long been settled by the Courts of this country that, where more than one inference from the testimony may be drawn, this question must be left to the jury.

After a full consideration of this case, the Court is satisfied that his Honor committed no error in refusing to direct the verdict for the defendant, and in submitting the case to the jury, which rendered a moderate verdict.

For the reasons aforesaid, the judgment of the lower Court is affirmed.

MESSRS. JUSTICES BLEASE, STABLER, and CARTER concur.

MR. CHIEF JUSTICE WATTS did not participate.

MR. JUSTICE COTHRAN (dissenting): This is an action for damages on account of the alleged wrongful death of Peter Taylor, an employee of the defendant company, due to the negligence of the defendant in certain specified par-

ticulars hereinafter adverted to. The defense was no negligence, contributory negligence, and assumption of risk. The trial was had before his Honor, Judge Townsend, and a jury and resulted in a verdict of $2,000.00 in favor of the plaintiff. The defendant has appealed upon various exceptions, which, so far as may be necessary, will be considered.

The deceased was employed as a "card stripper." The operation so called is cleaning of the cards of undesirable lint and trash which have accumulated upon the carding machine while in operation. The main part of the carding machine is a cylinder some four feet in diameter, upon the outer surface of which is attached what is called the "card clothing," leather perforated by "card teeth." It revolves upon a shaft extending through its center, projecting on one side into a fixed box and on the other, some six or eight inches, upon the end of which are two pulleys, side by side. One of the pulleys is known as the "tight" pulley, and the other the "loose" pulley. From the projecting shaft, upon which the two pulleys are attached, a belt extends to a much smaller pulley attached to the overhead shaft near the ceiling, by which the power is transmitted. The belt is shifted from one pulley on the projecting shaft to the other as it may be desired to start or stop the machine. This shifting is sometimes accomplished by an appliance called a "shifter," a forked piece of iron which serves the purpose also of keeping the belt upon the pulley that is being used. For some reason or other this particular machine was not equipped with a shifter. There was evidence also tending to show that the belt was slacker than it should ordinarily have been, at least that it was slack. The overhead shaft and pulley are not directly over the machine, but at an angle of about 45 degrees, so that the belt when hanging loose from the upper shaft, perpendicularly would be some feet away from the machine.

Upon the occasion in question the deceased attempted to shift the belt from the loose pulley to the tight, in order to start the card machine; the belt slipped off of the overhead pulley attached to the drive shaft near the ceiling, and, of course, off of the loose pulley, allowing it to hang perpendicularly from the drive shaft. The deceased then, standing directly under the drive shaft and away from the card machine, attempted to replace the belt upon the drive shaft pulley by a process known as "flapping"; that is, catching hold of the belt and giving it a sudden flap upward over and on the drive shaft pulley. By some unaccountable and unaccounted for, means he was caught by the belt, lifted up some four or five feet and dropped to the floor, causing injuries which resulted in his death a week later. It is conjectured that the belt became caught on some part of the drive shaft or pulley, or that he became entangled in the belt—no one knows how or why he was caught.

We do not consider it necessary to discuss any other feature of the case than the entire absence of evidence tending to show actionable negligence on the part of the defendant. The evidence does not disclose any defect in the belt, or in the drive shaft, or in the pulley, the three appliances with which he was working at the time of his injury. The fact that the belt may have had too much "slack" on it, which caused it to slip off of the drive shaft pulley, or the fact that the mechanical "shifter" was not upon the machine at the time, may have been instrumental in causing an injury, if the injury had occurred by reason of the slipping off of the belt, or while he was engaged in shifting the belt from the loose to the tight pulley; but the alleged negligence in these particulars had exhausted its efficacy for harm when the deceased attempted to flap the belt on the drive shaft pulley. It may be true, as in all cases of *remote* cause, that if the belt had not been too slack, or if the "shifter" had been in place, the belt would not have slipped off of the

drive shaft pulley; but, after these acts had spent their influence, they cannot be considered the proximate cause of the injury. The question is to be determined by what happened thereafter; and in considering that there is not a single feature that can be pointed out as the actionable cause of the event. The act of replacing the belt on the drive shaft pulley is shown to have been one of common occurrence and performed in the customary manner. We can only surmise that the injury resulted from the unfortunate act of the deceased in getting entangled in the belt. See *Cannon v. Lockhart Mills,* 101 S. C., 59; 85 S. E., 233. *Sexton v. Construction Co.,* 108 S. C., 516; 95 S. E., 129.

Upon the proposition that the mere happening of an accident is no evidence of negligence, see authorities cited by the writer hereof in the case of *Hopkins v. Southern Cotton Oil Co.,* 144 S. C., 395; 142 S. E., 615.

The judgment of this Court should be that the judgment of the Circuit Court be reversed, and that the case be remanded to that Court for judgment in favor of the defendant under Rule 27.